MORRIS v. SCENERA RESEARCH, LLC

[229 N.C. App. 31 (2013)]

---

ROBERT PAUL MORRIS, Plaintiff
v.
SCENERA RESEARCH, LLC, and RYAN C. FRY, Defendants

No. COA12-1481

Filed 20 August 2013

1. **Employer and Employee—Wage and Hour Act—Retaliatory Employment Discrimination Act—bonus earned—bonus calculable**

   The business court did not err in a case concerning a dispute regarding compensation and ownership rights between plaintiff and his employer by denying defendants' motions for directed verdict on plaintiff's Wage and Hour Act (WHA) and Retaliatory Employment Discrimination Act (REDA) claims and for JNOV. Plaintiff presented more than a scintilla of evidence in support of his position that he earned the $675,000 in issuance bonuses under his employer's bonus policy. Furthermore, the question of calculability under the WHA was properly presented to the jury for review, the formula offered by plaintiff was at least one reasonable way to calculate those bonuses, and the evidence relied on for that formula was supported in the record.

2. **Employer and Employee—Wage and Hour Act—liquidated damages—notice of change in bonus plan—lack of good faith or objective reasonableness**

The business court did not err in a case concerning a dispute regarding compensation and ownership rights between plaintiff and his employer by awarding plaintiff $210,000 in liquidated damages under the Wage and Hour Act (WHA). Defendants failure to provide plaintiff with notice of the change in his bonus plan constituted sufficient evidence to support the business court's finding that defendants did not act in good faith or with objective reasonableness and, therefore, justified the business court's award of liquidated damages in this case.

3. **Employer and Employee—Wage and Hour Act—liquidated damages—good faith and objective reasonableness**

The business court did not err in a Wage and Hour Act (WHA) case by failing to grant liquidated damages in response to the jury's award of issuance bonuses for the 150 patents pending with the patent office. Defendant employer made a proper showing of good faith and objective reasonableness as to its failure to pay the issuance bonuses.

4. **Damages and Remedies—treble—Retaliatory Employment Discrimination Act—no willful violation**

The business court did not err by declining to treble plaintiff's $390,000 jury award under the Retaliatory Employment Discrimination Act (REDA). There was competent evidence to support the business court's determination that defendant did not willfully violate REDA.

5. **Attorney Fees—Wage and Hour Act—Retaliatory Employment Discrimination Act—apportionment—common nucleus of facts**

The business court's award of attorneys' fees in a Wage and Hour Act (WHA) and Retaliatory Employment Discrimination Act (REDA) case was reversed and remanded to the trial court for further findings of fact and conclusions of law regarding whether plaintiff's claims arose from a common nucleus of operative fact and, thus, whether he was entitled to all of his attorneys' fees.

6. **Employer and Employee—Wage and Hour Act—election of remedies**

The trial court erred in its summary judgment order in a Wage and Hour Act (WHA) case by foreclosing plaintiff's right to elect

between money damages or rescission of the patent assignments. The case was remanded to the trial court with instructions that plaintiff is entitled to elect between his WHA [damages] award or rescission of his patent assignments.

**7. Appeal and Error—issue not reached**

Plaintiff's final argument in a Wage and Hour Act (WHA) case was not reached because the Court of Appeals remanded the case on the question of election of remedies between rescission and damages.

Appeal by Defendants from order entered 27 June 2012 and judgment entered 14 May 2012 by Judge James L. Gale in Wake County Superior Court. Appeal by Plaintiff from order entered 27 June 2012, judgment entered 14 May 2012, and memorandum opinion and order entered 4 January 2012 by Judge James L. Gale in Wake County Superior Court. Heard in the Court of Appeals 21 May 2013.

*Young Moore and Henderson P.A., by Walter E. Brock, Jr., and Andrew P. Flynt, for Plaintiff.*

*Kilpatrick Townsend & Stockton LLP, by Adam H. Charnes and John M. Moye; and Womble Carlyle Sandridge & Rice, by Burley B. Mitchell, Jr., for Defendants.*

STEPHENS, Judge.

*Procedural History and Factual Background*

This case concerns a dispute regarding compensation and ownership rights between Plaintiff Robert Paul Morris ("Morris") and his employer, Scenera Research, LLC ("Scenera"), for inventions developed by Morris during his employment with Scenera. On 25 September 2009, Morris filed a complaint against Scenera and its chief executive officer, Ryan C. Fry ("R. Fry") — collectively, "Defendants" — in Wake County Superior Court, alleging violations of the North Carolina Wage and Hour Act ("WHA") and the Retaliatory Employment Discrimination Act ("REDA") as well as claims for fraud, unjust enrichment, and breach of contract. R. Fry is the son of Stan Fry ("S. Fry"), who founded Scenera under the name "IPAC, LLC."

On 6 October 2009, Defendants filed notice of removal to the United States District Court for the Eastern District of North Carolina. Sixteen months later, on 16 February 2011, the District Court remanded the case for lack of subject matter jurisdiction to Wake County Superior Court,

where it was designated a complex business case and assigned to the Honorable James L. Gale of the North Carolina Business Court ("the business court"). Defendants filed their second amended answer and counterclaims on 31 March 2011, denying Morris's material allegations and, *inter alia*, seeking declaratory judgments that Morris: (1) was not entitled to rescind any patent ownership assignment he had already made to Scenera, (2) was obligated to assign ownership of unassigned inventions to Scenera, and (3) had resigned his employment and was not entitled to further bonus payments. Scenera also asserted claims that Morris breached his fiduciary duties and breached his obligation to continue assigning patents to Scenera.

On 24 October 2011, Morris moved for partial summary judgment, and Scenera moved for summary judgment. Morris sought to dismiss certain of Scenera's counterclaims and defenses, and Scenera sought to have the business court declare that Morris was "hired to invent" and, thus, that Scenera owned the rights to the inventions Morris had developed while working there. Scenera also sought to dismiss Morris's claims of fraud, unjust enrichment, and retaliatory discrimination. The business court addressed those motions on 4 January 2012 and described the background facts as follows:

> {9} Morris was a former [International Business Machines Corporation] employee with substantial training in software. He later was employed by Flashpoint Technologies, a company founded by S. Fry. S. Fry had also formed a company . . . known as IPAC. IPAC later became known as Scenera. While employed by Flashpoint, Morris and IPAC entered a [c]onfidentiality [a]greement which included mutual non-disclosure obligations and pursuant to which any confidential information remained the property of the disclosing party. . . . Morris was not at that time an IPAC employee[,] but contracted with IPAC.

> {10} S. Fry hired Morris in 2004 as Scenera's first employee. Morris had a series of discussions with S. Fry preceding this employment, the extent, nature, and significance of which are disputed [as to Morris's ownership rights over the inventions he developed at Scenera]. Morris testified that he expressed an interest in inventing but was neither obligated to nor expected to invent as a part of the regular employment duties he would undertake for Scenera, and that his base salary was for the substantial duties other than inventing for which he was responsible.

{11} Morris and Scenera did not sign a written employment agreement. Morris contends that the [p]arties understood that the ownership provisions of the [c]onfidential[ity] [a]greement that Morris signed while employed by Flashpoint continued. Scenera contends that there was no such agreement and that once Morris was hired to invent for Scenera, he had no ownership rights in inventions made during the course of that employment.

{12} . . . It is undisputed that during certain times of Morris's employment, in addition to his base salary, Morris was entitled to receive up to $10,000.00 for each of his inventions on which Scenera pursued patents, with $5,000.00 being earned when a patent application was submitted and $5,000.00 being earned when a patent issued. . . .

{13} Morris proved to be a prolific inventor. By July 2009 when Morris's employment with Scenera ended, Morris contends that the unpaid amount that had accrued under his bonus compensation plan was $210,000.00. . . . While Morris concedes that he voluntarily suspended bonus payments beginning at the end of 2007 as Scenera undertook to formulate an alternative compensation program, he contends that the bonus program was not cancelled, and that he continued to make patent assignments during 2008 only because he knew he was entitled to compensation in addition to his base salary. Morris contends that R. Fry promised . . . the offered alternative compensation would be tied to Scenera's profitability[,] more favorably reflect Morris's contribution to that profitability, and better reflect Morris's risk and his reward.

{14} Morris alternatively claims that even if the bonus program had been terminated at year-end 2007, R. Fry in July 2008 promised that the bonus system would be re[-]implemented for Morris if Scenera did not meet certain conditions . . . , such as providing Morris with an individual written employment contract and an appropriate incentive compensation program, and that these conditions were then not met.

{15} Scenera contests Morris's recollection of these conversations, and further claims that if R. Fry made promises, he kept them by proposing a[n] employment contract and

an employee incentive program. Ultimately, no agreement on any alternative compensation plan was ever reached and no written employment agreement was executed. Morris claims that these proposals did not satisfy promises R. Fry made and that other documents prove that R. Fry never had any intention of keeping his promises. Scenera claims R. Fry had never made promises specific enough to be enforceable[,] but rather had only agreed to make a proposal for further negotiation, which he did, and that essentially Morris seeks to enforce "an agreement to agree."

{16} Morris testified to his frustration with the lack of progress toward the promised incentive plan and written employment agreement and that he began in 2008 to press R. Fry for progress. He continued to press in 2009, ultimately hiring a lawyer who threatened on Morris's behalf to bring a wage claim under [the WHA] . . . for the $210,000.00 bonus compensation that had accrued and which Scenera refused to pay after Morris's demand.

{17} The parties disagree both on the facts leading up to the end of Morris's employment in July [of] 2009 and whether that end should be treated as a resignation or a termination. Morris claims that he was terminated in retaliation for his threat to bring a wage claim, which is a protected activity, such that he is entitled to recover under [REDA]. Scenera contends that Morris had made clear his intention to leave the company and his attorney had indicated that the only option was to negotiate a severance agreement, so that, as a result, Morris had ["]effectively resigned["] and Scenera accepted [this] resignation. Scenera alternatively contends that even if it had terminated [Morris], the termination was not retaliatory because [Scenera] had an independent right to terminate him because he refused to make any further invention assignments to Scenera while being legally obligated to do so.

{18} Scenera further claims that Morris, during the course of his employment, breached fiduciary duties owed to Scenera . . . .

In that context, the business court denied Morris's motion for partial summary judgment in its entirety. It granted Scenera's motion on the

question of whether Morris was "hired to invent"[1] and on Morris's fraudulent inducement, and unjust enrichment claims. The business court otherwise denied Scenera's motion.

The remaining claims — Morris's breach of contract, WHA, and REDA claims plus Scenera's patent ownership and breach of assignment counterclaims[2] — were tried before a jury beginning 30 January 2012. In its judgment entered after the trial, the business court described the evidence as follows:

> {3}   . . . Morris was employed by Scenera and . . . his employment ended on July 10, 2009. . . . [B]oth Scenera and Defendant [R. Fry] were Morris's employers under the [WHA] and [REDA].
>
> . . .
>
> {5}   . . . [O]n the date Morris's employment ended[,] July 10, 2009, Scenera had 150 pending patent applications on inventions for which Morris was the inventor. . . . Morris, by the time of trial, had assigned executed written agreements on all but a few of these inventions.
>
> {6}   [A]ny . . . bonus which [was] owed qualifie[d] as "wages" under the [WHA]. . . . The evidence for both parties indicated that Morris and Scenera reached [an] agreement on some changes to be implemented as of January 1, 2008, in consideration of Defendants potentially implementing a company-wide incentive compensation plan. . . .
>
> {7}   Morris contended that he [was] entitled to recover $210,000 for application and issuance bonuses which [accrued on 10 July 2009]. . . .
>
> {8}   . . . [N]egotiations over disputed bonuses were undertaken in 2009 when Scenera requested that Morris execute a written employment agreement. [T]hroughout these negotiations, Morris consistently made clear his belief that he was entitled to bonuses that had continued to accrue after January 1, 2008. . . . [L]ate in the negotiations for an

---

1. Therefore, the business court reasoned, there would be a presumption at trial that the patents Morris created during his employment were owned by Scenera. Evidence of an agreement to the contrary would rebut that presumption.

2. As Defendants note in their brief, "Scenera voluntarily dismissed without prejudice its [additional] counterclaim for breach of fiduciary duty."

employment agreement[, however,] Morris also demanded that he [should] be paid future patent issuance bonuses irrespective of whether he remained employed. . . . [D]uring [those] negotiations[,] Scenera considered payment of [the] $210,000 without admitting that this sum was being paid as earned wages, but . . . refused to consider paying patent issuance bonuses on patents issued after Morris's employment ended. Rather, Defendants' evidence was that Scenera had a consistent policy [, which] applied to all employees, including Morris, that payment of issuance bonuses was conditioned on continued employment. . . .

{10} As related to the REDA claim, Morris presented evidence that he had during the term of his employment asserted claims that he was entitled to issuance bonuses irrespective of his continued employment. The evidence also established that he refused to assign further inventions or sign further patent applications until the wage dispute was resolved. [W]hen the parties could not agree on . . . terms . . . for a written employment agreement, Morris advised Scenera that an employment agreement appeared out of reach and that he would only consider a severance agreement whereby [he] would continue to support the patent portfolio as an independent contractor. Morris [also] suggested that he was entitled to challenge Scenera's ownership of patents or applications based on [his] inventions. Ultimately, Morris's employment ended and no independent contractor agreement was ever [established]. . . .

{11} Morris introduced evidence that Scenera has enjoyed a [90%] average rate of patents issued from patent applications, and that the success rate on applications for Morris's inventions was somewhat higher. . . .

{12} Morris's [WHA] claim was for the wages he contended were due, along with statutory penalties. His REDA claim was to recover damages from his retaliatory termination. Defendants denied any liability under [both].

{13} . . . Scenera . . . counterclaimed for damages because of Morris's failure to support Scenera's patent rights. Defendants . . . submitted expert evidence to prove their damages. Defendants further contended that Morris

**MORRIS v. SCENERA RESEARCH, LLC**

[229 N.C. App. 31 (2013)]

refused to seek alternative employment after July 10, 2009, such that any recovery for retaliatory discharge must be reduced for failure to mitigate damages.

At the close of all the evidence, the business court granted Defendants' motion for directed verdict on the issue of patent ownership and denied Defendants' motion for directed verdict as to Morris's WHA and REDA claims.

The jury reached a unanimous verdict on 15 February 2012, awarding Morris: (1) $210,000 in patent bonuses for patent applications filed or patents issued between 1 January 2008 and 17 June 2009[3]; (2) $675,000 in patent bonuses for patent applications pending as of 17 June 2009[4]; and (3) $390,000 under REDA after a reduction for Morris's failure to mitigate damages. Following that verdict, Morris requested judgment for the amount awarded plus supplemental relief, including liquidated damages and attorneys' fees under the WHA as well as treble damages and attorneys' fees under REDA.

On 14 May 2012, the business court issued its judgment on the jury award and Morris's motion for supplemental relief, declining to treble Morris's $390,000 in damages under REDA, but granting $450,000 for all attorneys' fees and $210,000 in liquidated damages under the WHA because "Defendants [did not] demonstrate[] good faith or reasonable grounds for a belief that their failure to pay application and issuance bonuses accruing during the period of January 1, 2008 through July 10, 2009 was not a violation of the [WHA]." The court also declared that: (1) "Scenera is the owner of each of the inventions, patent applications, and patents identified in . . . Morris's [c]omplaint [because o]wnership of those inventions vested in Scenera at the time of invention"; (2) Morris shall assign any unassigned patent applications to Scenera; and (3) Scenera will not recover any damages for its patent ownership and breach of assignment counterclaims. On 30 May 2012, Defendants moved for judgment notwithstanding the verdict ("JNOV") or, in the

---

3. In its 14 May 2012 judgment, the business court included a copy of the jury verdict sheet which incorrectly listed this second date as 10 July 2009 — *i.e.*, the date Morris's employment ended — instead of 17 June 2009 — *i.e.*, the date Scenera informed its employees that it was canceling the original bonus program. This appears to be a clerical error resulting from an older version of Morris's proposed jury instructions. The finalized jury instructions, jury verdict, transcript, and parties' briefs confirm, however, that the correct date is 17 June 2009.

4. *See* footnote 3, *supra.*

alternative, for a new trial. The business court denied that motion on 27 June 2012. Both parties appealed.

## Discussion

### I. Defendants' Appeal

Defendants make three arguments on appeal. First, they contend that the business court erred in denying their motions for directed verdict on Plaintiff's WHA and REDA claims and for JNOV. Second, Defendants contend the business court erred by awarding $210,000 in liquidated damages under the WHA. Third, Defendants assert that, if the business court's judgment is reversed, its grant of attorneys' fees should be vacated. We find no error.

### A. Directed Verdict and JNOV

[1] "The standard of review of directed verdict [or JNOV] is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 322, 411 S.E.2d 133, 138 (1991) (citations omitted); *Tomika Invs., Inc. v. Macedonia True Vine Pentecostal Holiness Church of God, Inc.*, 136 N.C. App. 493, 498–99, 524 S.E.2d 591, 595 (2000). "[A n]on-movant's evidence which raises a mere possibility or conjecture cannot defeat a motion for directed verdict. If, however, the non-movant shows more than a scintilla of evidence, the court must deny the motion." *McFetters v. McFetters*, 98 N.C. App. 187, 191, 390 S.E.2d 348, 350, *disc. review denied*, 327 N.C. 140, 394 S.E.2d 177 (1990) (citation omitted); *see also Norman Owen Trucking, Inc. v. Morkoski*, 131 N.C. App. 168, 172, 506 S.E.2d 267, 270 (1998) ("The [JNOV] motion should be denied if there is more than a scintilla of evidence supporting each element of the non-movant's claim.").

### i. Evidence that Morris Earned the Issuance Bonuses Under the WHA

In support of their argument that the business court should have granted their motions for directed verdict and JNOV, Defendants assert that Morris presented "no evidence" that he "earned [the $675,000 in issuance] bonuses under Scenera's bonus policy . . . ." We disagree.

"[T]he [WHA] requires an employer to . . . pay those wages and benefits due *when the employee has actually performed the work required to earn them.* Once the employee has earned the wages and benefits under this statutory scheme, the employer is prevented from rescinding them," but for certain unrelated exceptions. *Kornegay v. Aspen Asset*

*Grp., LLC*, 204 N.C. App. 213, 229–30, 693 S.E.2d 723, 735–36 (2010) (citation omitted; emphasis in original). Defendants argue that Morris failed to present evidence that he "earned" the issuance bonuses under Scenera's policy because: (1) Scenera was only obligated to pay issuance bonuses after the patents issued, (2) the patents had not issued when Morris left, (3) Morris still had "a significant amount of additional work" to do after the initial patent application in order to ensure that the patents actually issued,[5] and (4) continued employment was the only means by which an employee working under the Scenera bonus policy could earn issuance bonuses.

In response, Morris points to his testimony that:

> When the patent was filed and I assigned [my rights in the patents to Scenera under] the assignment agreement, I was entitled to [the] $5,000 [issuance bonus]. . . . There was nothing as far as work with respect to the patent that I needed to do in order to earn that bonus.

He also cites to the testimony of Mona Singh ("Singh"), who worked for Scenera as an inventor. Singh agreed with the statement that "whatever bonuses applied to [an] agreement became earned and due at the time the patent was filed." Morris also calls our attention to evidence that his right to the issuance bonuses was not conditioned on continued employment with Scenera. Specifically, he notes that the bonus plans among Scenera's employees varied with each individual and cites to his testimony that no one ever told him he had to remain an employee to be entitled to an issue bonus. Morris supports this point with Singh's testimony that she had received "five or six" issuance bonuses *after* her employment with Scenera had ended, asserting that "Scenera did not[, therefore,] universally condition the payment of bonuses on continued employment."

After reviewing the testimony presented at trial and considering the evidence in a light most favorable to Morris, we conclude that Morris presented more than a scintilla of evidence in support of his position that he "earned" the $675,000 in issuance bonuses under Scenera's bonus policy. Indeed, the conflicting evidence offered by the parties is enough, on its own, to allow the matter to go to the jury. *See Citrini v. Goodwin*, 68 N.C. App. 391, 396, 315 S.E.2d 354, 359 (1984) ("[Defendant] introduced

---

5. In support of this point, Defendants cite to Morris's testimony that Scenera expected him and other inventors to "continue to honor the support, enforcement, [and] prosecution of the patent, all the way through the issuance and beyond."

evidence of novation which *conflicted with* [Plaintiff's] oral testimony. The trial court thus erred in granting [Plaintiff's] motion on this affirmative defense and in taking the issue from the jury.") (emphasis added). Accordingly, Defendants' first argument is overruled.

### ii. Whether Morris's Bonuses Were "Calculable" Under the WHA

Defendants next assert that, "[e]ven if Morris had earned the issuance bonuses" under the WHA, the business court should have granted their motions for directed verdict and JNOV because the bonuses were not "calculable" at the time of trial. We disagree.

Section 95-25.7 of the WHA provides the following instruction regarding "[p]ayment to separated employees": "Employees whose employment is discontinued for any reason shall be paid all wages due .... Wages based on bonuses ... shall be paid on the first regular payday after the amount becomes calculable when a separation occurs." N.C. Gen. Stat. § 95-25.7 (2011). At trial, Morris argued that the amount of money owed by Scenera in issuance bonuses was "calculable" because 150 patent applications were pending with the U.S. Patent and Trademark Office ("the patent office") at the end of his employment. Having previously testified that approximately 90% of the patents he submitted to the patent office had successfully issued in the past,[6] Morris asserted that the following formula could be applied to "calculate" the issuance bonuses that Scenera owed him: 150 outstanding patents x $5,000 for each successfully issued patent x 90% success rate = $675,000 in issuance bonuses owed. Because the patents had not yet issued at the time of trial, the business court presented the issue of whether issuance bonuses for those patents were "presently calculable" to the jury, which ultimately awarded $675,000 in payment for issuance bonuses to Morris.

Before discussing the merits of Defendants' second argument, we address their preliminary contention that the business court erred in submitting the question of "whether the issuance bonuses are presently calculable" to the jury. Defendants contend this is a question of law, not fact, and should have been decided by the judge. Though this argument is not an element of Defendants' appeal of the denial of their motions for directed verdict and JNOV, it was properly preserved by objection. Accordingly, we address it here as a predicate matter.

---

6. As discussed above, Morris's agreement with Scenera entitled him to $5,000 in bonus compensation when a patent issued, in addition to the $5,000 in bonus compensation he earned upon the submission of a patent application.

**MORRIS v. SCENERA RESEARCH, LLC**

[229 N.C. App. 31 (2013)]

Outside the presence of the jury, the following exchange occurred between the business court (here, "THE COURT") and counsel for Morris (here, "MR. BROCK"):

> THE COURT: [W]hat the jury instruction says is . . . if [the members of the jury] believe [they] can calculate [the value of the issuance bonuses owed by Scenera], [they should] calculate it and put the number there.

> If [they] feel like [they] can't calculate it because [the patents] haven't issued and that's critical to [them], [they should] put down whether issued. So if they are able to calculate it[,] I told them to calculate it and put a number down.

> MR. BROCK: . . . [B]ut before there is a number down you are asking them what may be a [purely] legal question, is it calculable.

> . . .

> THE COURT: Mr. Brock, if they believe they can calculate it . . . , that sounds like ["]calculable["] to me. . . . But I believe that this jury instruction is framed in such a way that you can tell [them: "]I believe you can calculate this, it's easy to calculate.["]

> . . .

> THE COURT: . . . It is interesting — and I may be giving the jury an opportunity to decide what is a legal issue. I agree, Mr. Brock. But I don't know how else to frame the issue.

Regarding the different duties of the judge and jury, our Supreme Court has stated that "[t]he judge lays down and explains the law, and the jury is under [the] obligation to accept and apply the law as thus explained." *State v. Fogleman,* 204 N.C. 401, 405, 168 S.E. 536, 538 (1933). The determination of the weight of the evidence and the resulting facts from the evidence is the exclusive province of the jury. *Id.*; *see also Sneed v. Lions Club of Murphy, N.C., Inc.,* 273 N.C. 98, 101, 159 S.E.2d 770, 772 (1968) ("It is the province of the court to determine whether the evidence, circumstantial, direct, or a combination of both, considered in the light most favorable to the plaintiff, is sufficient to permit a legitimate inference of the facts essential to recovery; and it is the province of the jury to weigh the evidence and to determine what it proves or fails to prove.") (citations omitted).

In this case, the business court asked the jury to determine whether it could calculate the amount of issuance bonuses owed to Morris in order to answer the larger question of whether the WHA applied to enforce payment of those wages. Though the business court characterized this question as a potential "legal issue" in its colloquy with Mr. Brock, we hold that "whether bonus compensation is 'calculable' under the WHA" is a question of fact. Section 95-25.7 of the WHA requires the decision-making entity to evaluate the evidence presented at trial, apply its logical reasoning, and, in doing so, determine if such evidence is sufficient to characterize the amount of earned bonuses as "presently calculable." This requires a weighing of the evidence and, thus, falls in a jury trial within the exclusive purview of the jury. *See Fogleman*, 204 N.C. at 405, 168 S.E. at 538 (1933); *cf. Ferguson v. Ferguson*, 55 N.C. App. 341, 347, 285 S.E.2d 288, 292 ("Whether plaintiff committed an unconscionable act and whether her actions were more egregious than those of defendants[] are questions of material fact to be decided by a jury and not by the court."), *disc. review denied*, 306 N.C. 383, 294 S.E.2d 207 (1982). Accordingly, we hold that the question of calculability under the WHA was properly presented to the jury for review. *Cf. Meachan v. Montgomery Cnty. Bd. of Ed.*, 47 N.C. App. 271, 278, 267 S.E.2d 349, 353 (1980) ("If the evidence in a particular case raises a permissible inference that [the elements of equitable estoppel exist], . . . estoppel is a question of fact for the jury . . . .").

Even though this question was properly before the jury, Defendants argue that "there is no evidence that the issuance bonuses were calculable" because "[t]he amount of each bonus will not be calculable unless and until such time as the [patent office] disposes of a pending application." They note that many of Morris's patents had been pending for eight years at the time of the trial and point out that it is difficult to know whether a particular patent will issue and, if it does, when that issuance will occur. Based on those circumstances, Defendants contend "there was no *evidence* [at trial] that [Morris's historic] success rate on the 150 *pending* [patent] applications would be the same as for applications that previously received a final [patent office] determination." (Emphasis in original). We disagree.

The term "calculable" is not defined in the WHA or in our case law. *See* N.C. Gen. Stat. § 95-25.2 (2011) (defining terms used in the WHA); *see also Kornegay*, 204 N.C. App. at 230, 693 S.E.2d at 736. In such a circumstance, when the language of a statute is clear and unambiguous, we apply its plain and definite meaning. *Fowler v. Valencourt*, 334 N.C. 345, 348, 435 S.E.2d 530, 532 (1993). Because we find that the language

of section 25.7 of the WHA[7] is, in fact, clear and unambiguous, we apply its plain meaning here.

The American Heritage College Dictionary defines "calculable" as "[t]hat [which] can be calculated *or estimated.*" The American Heritage College Dictionary 198 (3d ed. 1997) (emphasis added). At trial, Morris offered a formula for estimating the issuance bonuses he would likely be owed based on evidence regarding the number of patents pending with the patent office at that time, his previous issuance rate on patents submitted to the patent office, and his agreement with Scenera regarding payment for each issued patent. Taking that evidence in a light most favorable to Morris, we hold that the formula was adequate to submit to the jury the question of whether the issuance bonuses owed were "calculable" under the WHA. The formula offered by Morris was at least one reasonable way to calculate those bonuses, and the evidence relied on for that formula was supported in the record. Accordingly, we hold that the business court did not err in submitting this question to the jury.

### B. Liquidated Damages for Application and Issuance Bonuses

[2] In its 14 May 2012 judgment, in response to Morris's motion for supplemental relief, the business court granted $210,000 in liquidated damages to Morris for Defendants' failure to pay application and issuance bonuses between 1 January 2008 and 10 July 2009. Defendants argue that the business court erred in granting those damages because Scenera "acted with both subjective good faith and an objectively reasonable belief that it was not violating the [WHA.]" We are unpersuaded.

Section 25.22(a1) of the WHA provides:

> In addition to the amounts awarded pursuant to subsection (a) of this section, the court shall award liquidated damages in an amount equal to the amount found to be due as provided in subsection (a) of this section, provided that if the employer shows to the satisfaction of the court that the act or omission constituting the violation was in *good faith* and that the employer had *reasonable grounds for believing that the act or omission was not a violation of this Article,* the court may, in its discretion, award no liquidated damages or may award any amount of

---

7. "Wages based on bonuses . . . shall be paid on the first regular payday after the amount becomes *calculable* when a separation occurs. . . ." N.C. Gen. Stat. § 95-25.7 (emphasis added).

liquidated damages not exceeding the amount found due as provided in subsection (a) of this section.

N.C. Gen. Stat. § 95-25.22(a1) (2011) (emphasis added). At trial,

[t]he employer bears the burden of avoiding liquidated damages by showing that it acted in good faith and with a reasonable belief that its actions were not in violation of the [WHA]. Even if an employer shows that it acted in good faith[] and with the belief that its action[s] did not constitute a violation of the Act, the trial court may still, in its discretion, award liquidated damages in any amount up to the amount due for unpaid wages.

*Kornegay*, 204 N.C. App. at 241, 693 S.E.2d at 742 (citations, quotation marks, and brackets omitted).

A court's determination regarding whether an employer has made a showing of good faith and objective reasonableness is reviewed under a *de novo* standard. *See id.* at 245, 693 S.E.2d at 745. The findings of fact in support of that determination are reviewed under a competent evidence standard. *Id.* If a trial court properly determines that an employer failed to make a showing of good faith and objective reasonableness under those standards, then it has no discretion and must award liquidated damages to the employee. *Hamilton v. Memorex Telex Corp.*, 118 N.C. App. 1, 15, 454 S.E.2d 278, 285, *disc. review denied*, 340 N.C. 260, 456 S.E.2d 830 (1995). If, however, the trial court properly determines that the employer established good faith and objective reasonableness, we review its decision regarding whether to award liquidated damages for abuse of discretion. *Kornegay*, 204 N.C. App. at 241, 693 S.E.2d at 742. "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

In granting Morris's motion for supplemental relief, the business court made the following determination:

Defendants have not adequately demonstrated good faith or reasonable grounds for a belief that their failure to pay application and issuance bonuses accruing during the period of January 1, 2008 through July 10, 2009 was not a violation of the [WHA]. While there is evidence to support Defendants' subjective good faith, *there was no evidence supporting a conclusion that a change in Morris's*

*wages was reduced to writing until June 2009, shortly before his employment ended. . . .* The court, considering the greater weight of the evidence, further concludes in its discretion that it would award liquidated damages in the amount of $210,000[] even if Defendants had proven that they acted in good faith or with a reasonable belief within the meaning of the [WHA].

(Emphasis added). Accordingly, the court's conclusion that Defendants failed to establish good faith and objective reasonableness appears to turn on its finding that any change in the agreement to pay wages to Morris was not reduced to writing until June of 2009.[8]

Defendants do not contest the validity of the business court's finding that Scenera failed to reduce any change in Morris's pay to writing until June of 2009. Rather, they refer to the court's determination as "flawed" and argue that, as a matter of policy, any failure to properly notify employees under the WHA should not "justify the award of liquidated damages" because that would mean "*every* failure to properly notify employees of changes in wages would *automatically* entitle [those employees] to liquidated damages, a result inconsistent with the plain text of [section 95-22.22(a1)]." (Emphasis in original). We disagree.

As Morris notes in his brief, the WHA requires every employer to "[n]otify employees, in writing or through a posted notice . . . , at least 24 hours prior to any changes in promised wages." N.C. Gen. Stat. § 95-25.13(3). Failure to do so is a violation of the Act. Here, the business court cited to Defendants' failure to provide written notice of the change in Morris's bonus plan as support for its determination that Defendants failed to act in good faith and with objective reasonableness. While that failure does not and could not result in "automatic" liquidated damages, it constitutes a violation of the Act and, as such, *may* be used as evidence that the employer acted unreasonably or without good faith.[9] For that reason, we hold that Scenera's failure to provide Morris with notice of the change in his bonus plan constituted sufficient evidence to support the business court's finding that Defendants did not act in good faith or with objective reasonableness and, therefore, justified the

---

8. Because damages might be avoided only if the employer establishes *both* good faith and objective reasonableness, the court's finding supports its award of liquidated damages as long as it properly demonstrates Defendants' failure to establish *either* good faith or objective reasonableness.

9. Such a failure does not, however, preclude an employer from nonetheless establishing that it acted in good faith and with objective reasonableness.

business court's award of liquidated damages in this case. Accordingly, Defendant's argument is overruled.[10]

### C. Attorneys' Fees

[3] Lastly, Defendants contend that, if this Court reverses the business court's judgment on any of the grounds discussed above, we should vacate its award of attorneys' fees. Because we find no error regarding the business court's judgment on Defendants' first and second issues on appeal, we need not address this third argument.

### II. Plaintiff's Appeal

Morris makes five arguments on appeal. First, he contends that the business court erred by failing to add liquidated damages to the jury's award of patent bonuses for the pending patents. Second, he asserts that the business court erred by failing to award treble damages under REDA. Third, he argues that the business court erred by reducing the attorneys' fees award. Fourth, he claims that he is "entitled to elect between rescinding the patent assignments or accepting the award of patent bonuses and liquidated damages." Fifth, he argues — in the alternative to his fourth argument — that the business court erred in granting Defendants' motions for summary judgment and directed verdict on patent ownership. We find no error on the first two arguments, reverse the business court's judgment in part under the third argument, remand in part on the third and fourth arguments, and do not address the fifth argument.

### A. Liquidated Damages for Pending Patents

[4] Morris contends that the business court erred in failing to grant liquidated damages in response to the jury's award of issuance bonuses for the 150 patents pending with the patent office. He argues that Scenera did not establish that it acted with good faith and objective reasonableness under section 95-25.22(a1) of the WHA when it denied the bonuses on the belief that "Morris was required to be employed at the time the

---

10. Even if Defendants had acted in good faith and in an objectively reasonable way, the business court nonetheless retained discretion under the Act to grant Morris's motion for liquidated damages. *Hamilton*, 118 N.C. App. at 15, 454 S.E.2d at 285 ("[E]ven if an employer shows that it acted in good faith, and with the belief that its action did not constitute a violation of the [WHA], the trial court may still, in its discretion, award liquidated damages in any amount up to the amount due for unpaid wages."). The business court acknowledged this fact in its opinion, stating that it would have awarded liquidated damages for that same amount in its discretion under the Act "even if Defendants had proven that they acted in good faith or with a reasonable belief . . . ." Defendants inexplicably contest this point in their brief, wrongly alleging that the trial court "had no such discretion."

patents issued in order to receive his bonuses." For that reason, Morris contends that the business court was required to award liquidated damages under the Act. We disagree.

In its 14 May 2012 opinion, the business court determined that Scenera made a proper showing of good faith and objective reasonableness as to its failure to pay the issuance bonuses. As noted above, we review the court's findings under a competent evidence standard. *See Kornegay*, 204 N.C. App. at 245, 693 S.E.2d at 745. If those findings are based on competent evidence, we review the court's conclusion that the employer acted in good faith and with objective reasonableness *de novo*. *See id.* If we conclude that the business court correctly determined that the employer acted in good faith and with objective reasonableness, we review the court's award of liquidated damages for abuse of discretion. *See id.* at 241, 693 S.E.2d at 742. If the court did not correctly determine that Scenera acted in good faith and with objective reasonableness, then it necessarily erred, and liquidated damages must be awarded. *See* N.C. Gen. Stat. § 95-25.22(a1); *Hamilton*, 118 N.C. App. at 15, 454 S.E.2d at 285.

Under section 95-25.22(a1) of the WHA, a court may decline to award liquidated damages in its discretion if the employer shows that it acted in good faith and with reasonable grounds for believing that it was not in violation of the WHA. N.C. Gen. Stat. § 95-25.22(a1). In declining to award liquidated damages to Morris, the business court made the following determination:

> {24} . . . Defendants reasonably believed that Morris and Defendants agreed at the inception of Morris's employment that Morris would receive patent application and patent issuance bonuses, that his employment at the time of patent issuance was a condition of the patent issuance bonuses[,] and that issuance bonuses required continued employment. Defendants never changed this condition which was in place when Morris's employment began. That belief was not unreasonable, even after an informed reading of the [WHA] and related regulations. The court finds that when refusing to pay issuance bonuses for patents which had not yet issued at the time Morris's employment ended, Defendants acted in good faith and with a reasonable belief that they were not in violation of the [WHA].

In challenging the business court's determination, Morris argues that Defendants' failure to pay these bonuses was not objectively reasonable because (1) the WHA has "clear and explicit requirements and

prohibitions" regarding an employer's obligation to give notice of any grounds for the "loss or forfeiture of a bonus" and (2) Scenera failed to provide Morris with such notice.

This argument ignores the business court's finding that Defendants failed to pay issuance bonuses to Morris *in good faith.* Even accepting Morris's contention that the WHA's "loss or forfeiture" requirements are applicable to Scenera's actions,[11] Defendants could not reasonably be expected to provide Morris with notice that they were enforcing a policy which would cause the loss or forfeiture of some of his bonuses if they held a good faith belief that their policy was not causing such loss or forfeiture. Because Morris's argument does not address the issue of whether there is competent evidence to support the business court's findings that Defendants acted *in good faith*[12] and because recovery is only available if the employer failed to act in good faith *and* lacked reasonable grounds for believing that it was not in violation of the WHA, we need not evaluate Morris's argument that Defendants acted in an objectively unreasonable manner by failing to provide him with notice that they would discontinue payment. Because Morris failed to show that Scenera did not act in good faith, he cannot recover liquidated damages resulting from Scenera's denial of bonuses for the pending patents. Therefore, Morris's first argument is overruled.

### B. *Treble Damages Under REDA*

[5] A willful violation of the retaliatory discrimination section of REDA requires the trial court to treble damages under that Act. N.C. Gen. Stat. § 95-243 (2011). Morris asserts that the business court erred in declining to treble his $390,000 jury award under REDA because the jury rejected Defendants' alternative contentions that Morris had "effectively resigned" or that Defendants would have terminated him even if he had not made the disputed wage claims. Accordingly, Morris reasons, Defendants' violation of REDA was "willful" as a matter of law. We disagree.

---

11. Defendants contend that notice was not required under the WHA because their failure to pay the issuance bonuses was in accordance with a pre-existing term or condition of the company bonus policy and, therefore, did not constitute a forfeiture or loss of wages under the WHA.

12. Though Morris includes the header "Scenera Did Not Act With Subjective Good Faith," he makes no argument to that effect in his brief. Accordingly, that argument is deemed abandoned. *See* N.C.R. App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned.").

In pertinent part, Section 95-243 of REDA states:

(c)  The employee . . . may seek and the court may award any or all of the following types of relief [in a civil action]:

. . .

(4)  Compensation for lost wages, lost benefits, and other economic losses that were proximately caused by the retaliatory action or discrimination.

If in an action under [REDA] the court finds that the employee was injured by a *willful violation* of [the prohibition against discrimination or retaliatory action by the employer], the court shall treble the amount awarded under [subsection 4].

N.C. Gen. Stat. § 95-243 (emphasis added). In order to determine whether Defendants' violation of REDA was "willful," we must first determine the meaning of that term.

"Willful" is not defined under REDA. The business court, in its 14 May 2012 judgment, described "the relevant question" on the issue of Defendants' willfulness as "whether Defendants acted in conscious and intentional disregard of or indifference to Morris's rights when terminating his employment." However, the North Carolina appellate courts have neither defined the term "willful" nor set a standard for reviewing a trial court's finding of willfulness under section 95-243. Accordingly, we may "look to federal decisions for guidance." *See Abels v. Renfro Corp.*, 335 N.C. 209, 218, 436 S.E.2d 822, 827 (1993) (noting that the appellate courts may "look to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases") (citation omitted).

In *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 100 L. Ed. 2d. 115 (2010), the United States Supreme Court addressed a three-year exception to the general two-year statute of limitations for "willful" violations of the Fair Labor Standards Act ("FLSA"). *Id.* at 129, 100 L. Ed. 2d at 120. Using the standard for "willfulness" originally articulated in relation to the Age Discrimination in Employment Act ("ADEA"), the Supreme Court defined a willful violation of the FLSA as one in which the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *Id.* at 133, 100 L. Ed. 2d at 123. The Fourth Circuit applied that standard one year later in *Desmond v. PNGI Charles Town Gaming, LLC,* noting that "[n]egligent conduct is insufficient to show willfulness" under *McLaughlin.* 630 F.3d

351, 358 (4th Cir. 2011) ("[O]nly those employers who either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA have willfully violated the statute.") (citations, quotation marks, and brackets omitted). Because REDA and the FLSA were both established for the purpose of protecting employees from retaliation by their employers,[13] we hold that the Supreme Court's definition of willfulness is applicable to section 243 of REDA and apply it in this case.

The United States Court of Appeals for the Eleventh Circuit has determined that the issue of "willfulness" under the ADEA is a question of fact for the jury. *Formby v. Farmers & Merchants Bank*, 904 F.2d 627, 632 (11th Cir. 1990)[14] ("[T]he determination of whether a violation of the ADEA was willful is a determination of fact, to which a party, upon giving proper notice, is entitled to have a jury decide the plaintiff's entitlement to liquidated damages."). We agree with that reasoning and apply it to our interpretation of willfulness under REDA. Accordingly, we hold that a determination of "willfulness" under REDA is a finding of fact for the jury to decide, not for the judge. In this case, however, the issue of willfulness was decided by the business court.

Under certain circumstances, a party may waive or forfeit its right to have a jury decide questions of fact. *Sykes v. Belk*, 278 N.C. 106, 123, 179 S.E.2d 439, 449 (1971). Here, Morris waived his right to have the issue of willfulness decided by the jury because he explicitly concurred with the business court's suggestion that the issue of Scenera's "willfulness" under REDA was for the court to decide. Accordingly, we review the business court's factual determination that Scenera did not "willfully" violate REDA under the competent evidence standard used for a trial court's findings of fact made during a bench trial. *See generally In re Estate of Archibald*, 183 N.C. App. 274, 276, 644 S.E.2d 264, 266 (2007)

---

13. "In enacting REDA and its predecessor statute, N.C. Gen. Stat. § 97-6.1 [(2011)], the General Assembly intended to prevent employer retaliation from having a chilling effect upon an employee's exercise of his or her statutory rights under the Worker's Compensation Act." *Whitings v. Wolfson Casing Corp.*, 173 N.C. App. 218, 222, 618 S.E.2d 750, 753 (2005) (citation omitted). Similarly, "[t]he anti-retaliation provision [of the FLSA] facilitates the enforcement of the FLSA's standards by fostering an environment in which employees' fear of economic retaliation will not cause them quietly to accept substandard conditions." *Ball v. Memphis Bar-B-Q Co.*, 228 F.3d 360, 364 (4th Cir. 2000) (citation and quotation marks omitted).

14. The definition of willfulness used in *Formby* under the ADEA is the same definition that the United States Supreme Court used in *McLaughlin* under the FLSA. In addition, the ADEA provides in a manner similar to REDA that liquidated damages are available only for *willful* violations of the Act. 29 U.S.C. § 626(b) (2006).

("The standard of review on appeal from a judgment entered after a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law . . . .") (citations and quotation marks omitted).

In determining that Defendants did not willfully terminate Morris's employment, the business court relied on the following "key evidence":

{31} Draft employment agreements [between the parties] were exchanged in late May or early June 2009. Morris believed that Scenera was overreaching, in that any bonus being offered was discretionary and could be withdrawn at any time, while Morris was being asked to forego his claim to accrued and future patent bonuses in exchange. Scenera believed that Morris was demanding unreasonable terms for an employment agreement. As the dispute intensified . . . , Morris's counsel . . . wrote an e-mail . . . in which he stated that,

negotiations have established to us that our representative clients have fundamentally different perspectives on . . . Morris's value and contribution to Scenera. As you know, in a free market under such circumstances, it's best to part ways. Accordingly, . . . Morris wants to immediately resolve the outstanding issue regarding non-payment of patent bonuses and negotiate a termination agreement.

. . .

[S]ince the parties are so far apart on a permanent employment agreement, and the part[-]time concept does not look workable, we suggest pursuing a separation agreement.

[Morris's attorney] suggested terms for such an agreement. He also indicated that he would initiate legal recourse to collect the unpaid bonuses if they had not been paid by July 13, 2009.

{32} Subsequent to [the e-mail from Morris's counsel], Fry and Morris spoke directly, after which Morris wrote Fry two July 7, 2009 e-mails . . . . The first e-mail concluded with the following statement: "There [was] one proposal

only. That is, the payment of $210k, the issue bonuses, and my terminating my employment are all elements of a single proposal. They stand together." The second e-mail encouraged Fry to have his counsel . . . contact [Morris's counsel] to clarify any confusion.

{33} Both [counsel for Fry and counsel for Morris] affirmed that they did not talk again before [counsel for Fry] responded to [counsel for Morris's] July 2, 2009 e-mail by her e-mail on July 9, 2009, which [began as follows:] "Scenera understands that . . . Morris has put forth an effective resignation[."] [Fry's counsel also] indicated that Scenera "accepts [Morris's] resignation effective tomorrow morning, July 10, 2009." [Counsel for Fry] indicated that Scenera contended that no bonus compensation was due Morris, but then offered payment of $210,000 "on condition that . . . Morris acknowledge that such sum is the full amount due and owing him through the date of termination," and provided that Scenera would make those payments in two successive payroll periods. [Counsel for Fry] . . . [also stated] that Scenera refused to pay any future patent issuance bonuses[,] [offered] strongly worded cautions that Morris would suffer adverse consequences should he elect to file suit, and [suggested that] negative perceptions [might] impair his ability to secure alternative employment.

{34} While Morris did not specifically resign, it was also apparent that Morris was unlikely to continue his employment. It was also clear that no agreement on the wage claim was imminent and that Morris intended to further prosecute his wage claims and intended to continue to dispute patent ownership and [his] obligation to assign inventions while those claims remained unresolved.

{35} Scenera offered to pay the disputed $210,000, but never without condition. It is . . . unclear whether Morris would have agreed to sign an employment agreement had Scenera paid that amount without condition while also refusing the other elements that Morris insisted must be included in any employment agreement, including future patent issuance bonuses.

{36} The court acknowledges that the jury rejected Scenera's contention that Morris had resigned. But in

considering willfulness the court also considers that Morris himself raised the issue of severing his employment and preferring to continue his association only under a consulting arrangement. Ultimately, the failure to reach an agreement, if based on wages, related to that portion of the wage claim for patent issuance bonuses for patents which had not yet issued. On this issue, the court has concluded that Defendants' denial was in good faith.

Morris argues that the court erred in finding that Scenera did not act willfully by citing to: (1) Morris's testimony that Scenera's general counsel informed him that he should "quit" and stated "you know, we can't fire you" when Morris refused to quit; (2) the fact that Defendants hired a number of competent law firms to advise them regarding North Carolina's employment law; (3) Defendants' "relentless insistence that Morris 'effectively resigned' " as evidence that they did not want to "be seen as firing Morris"; and (4) Defendants' failure to offer evidence "that they were unaware that firing Morris for pursuing his WHA claims was illegal."

Defendants respond by pointing out that: (1) Scenera's general counsel "flatly denied making [the] statement [alleged by Morris that 'we can't fire you'],"and the business court was not required to rely on that statement as evidence of willfulness even if it had been made; (2) Morris's counsel testified that he suggested "look[ing] at terminating formal employment and set[ting Morris] up as an independent contractor" in his early July message to Scenera; and (3) R. Fry believed that Morris was intentionally "not going to do [his] job" because of difficulties resulting from negotiations with Scenera.

After a thorough review of the record on appeal, we find that there is competent evidence to support the business court's determination that Scenera did not willfully violate REDA. Though the jury rejected Defendants' argument that Morris "effectively resigned," it made no statement regarding Scenera's *belief* on the issue of Morris's employment status. Further, Defendants have offered evidence, *supra*, that Scenera held a good faith belief that it was not in violation of REDA. Therefore, we find that the evidence presented at trial and summarized in the business court's 14 May 2012 judgment is competent to support the conclusion that Scenera did not know or show reckless disregard as to whether its conduct was prohibited by REDA. Accordingly, the business court did not err in declining to treble Morris's $390,000 REDA damage award.

### C. Attorneys' Fees

**[6]** In its May judgment following the jury trial, the business court determined that "Morris should recover attorneys' fees as a successful litigant, but [that] the total fees and expenses sought should, in part, be allocated among the claims on which he was successful and those on which he was not." Morris was successful on all ten of the issues submitted to the jury and on Scenera's counterclaims, but failed on the questions of fraudulent inducement, unjust enrichment, and whether he was "hired to invent," which the business court resolved on summary judgment. For that reason, the court granted $450,000 in attorneys' fees instead of the $800,000 requested by Morris.

As the business court notes in its judgment, sections 95-25.22(d) of the WHA and 95-243(c) of REDA provide that the trial court "may" award reasonable costs and expenses, including attorneys' fees, to the plaintiff. N.C. Gen. Stat. §§ 95-25.22(d), -243(c). Interpreting subsection 25.22(d) of the WHA, we have held that "[a] trial court's decision [regarding] whether or not to award attorneys' fees . . . is reviewed for abuse of discretion." *Kornegay*, 204 N.C. App. at 247, 693 S.E.2d at 746; *Fulk v. Piedmont Music Ctr.*, 138 N.C. App. 425, 435, 531 S.E.2d 476, 482 (2000) ("[W]here, as here[,] the Act applies, the court in its discretion may award plaintiff attorney[s'] fees."). Because subsection 243(c) of REDA similarly provides that a trial court "*may* award [attorneys' fees] to the plaintiff," we hold that a court's decision to grant attorneys' fees under that section is similarly reviewed for abuse of discretion. *See* N.C. Gen. Stat. § 95-243(c) (emphasis added); *see also Kornegay*, 204 N.C. App. at 247, 693 S.E.2d at 746. "An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision." *Sowell v. Clark*, 151 N.C. App. 723, 727, 567 S.E.2d 200, 202 (2002) (citation and quotation marks omitted).

On appeal, Morris argues that the business court erred by allocating among legal claims — and thereby reducing his award of attorneys' fees — because (1) claims that arise from a common nucleus of operative fact should not be allocated; (2) the business court "failed to make any findings of fact or offer any conclusions of law on whether Morris's claims and Defendants' counterclaims [arose] from a common nucleus of operative fact[]"; and (3) the parties' claims did, in fact, arise from a common nucleus of operative fact. We agree with Morris's first two arguments and refrain from addressing the third.

Morris bases his argument on three of our opinions: (1) *Hamilton*, 118 N.C. App. 1, 454 S.E.2d 287; (2) *Okwara v. Dillard Dep't Stores*,

*Inc.*, 136 N.C. App. 587, 525 S.E.2d 481 (2000); and (3) *Whiteside Estates, Inc. v. Highlands Cove, LLC*, 146 N.C. App. 449, 553 S.E.2d 431 (2001), *dismissed as moot and disc. review denied,* 356 N.C. 315, 571 S.E.2d 219–20 (2002). First, in *Hamilton*, we concluded that "the trial court did not err in refusing to reduce the [trial court's award of] attorneys' fee award to account for [certain members of a class of plaintiffs] who prevailed only on [their] contract claim[s]" because "the attorneys' work was not divisible between the [WHA] claims and [those] contract claims." *Hamilton*, 118 N.C. App. at 17, 454 S.E.2d at 286 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 76 L. Ed. 2d 40 (1983) and noting that the reasoning of the federal courts, while not binding on us, is instructive). Second, in *Okwara*, we affirmed "the trial court's conclusion that no apportionment of fees was necessary" because "plaintiff's claims arose from a common nucleus of operative fact[]" and were thus "inextricably interwoven." *Okwara*, 136 N.C. App. at 596, 525 S.E.2d at 487 (quotation marks omitted). In so holding, we relied on and described the Supreme Court's opinion in *Hensley* as follows:

> [W]here multiple state law and federal law claims are litigated together, fees incurred defending both the federal civil rights claims and other claims may be fairly charged to the prevailing party under § 1988 [of the U.S. Code] so long as all of these claims stem from a common nucleus of law or fact. This is so because, as noted in *Hensley*, "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." This determination is left largely to the discretion of the trial courts.

*Id.* at 595, 525 S.E.2d at 486–87 (citations and brackets omitted). Lastly, in *Whiteside Estates*, we determined that the trial court was not required to apportion attorneys' fees because "all of [the] plaintiff's claims [arose] from the same nucleus of operative fact[] and each claim was 'inextricably interwoven' with the other claims . . . ." *Whiteside Estates*, 146 N.C. App. at 467, 553 S.E.2d at 443 (citing *Okwara*, 136 N.C. App. at 596, 525 S.E.2d at 487). These cases are controlling when considering the question of whether an award of attorneys' fees may be allocated under the WHA or REDA.

The *Hensley* opinion, which provided the rationale for each of the cases discussed above, concerns a federal statute allowing for attorneys' fees in civil rights cases. Like the WHA and REDA, that statute provides that the trial court, "in its discretion, *may* allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b)

(2006) (emphasis added). Interpreting that statute, the *Hensley* Court provided the following instruction:

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney[s'] fees reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Hensley*, 461 U.S. at 440, 76 L. Ed. 2d at 54–55. In reviewing the business court's allocation of attorneys' fees under the WHA and REDA, we must follow our opinions in *Whiteside Estates, Hamilton,* and *Okwara* and employ the rationale laid down in *Hensley. See In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).

In his brief, Plaintiff points out that the trial court failed to make any findings of fact or conclusions of law regarding whether his claims arose from a common nucleus of operative fact. He argues that his claims are related nonetheless because "[e]very claim asserted in the [c]omplaint and [a]mended [c]omplaint by Morris arises out of his claim for patent bonuses, Defendants' refusal to pay those bonuses, the legal consequences of that refusal, and Defendants' firing of Morris in retaliation for pursuing those claims." Defendants contend, to the contrary, that the trial court did not abuse its discretion in allocating attorneys' fees among Morris's claims because those claims are "derived from two separate disputes": (1) Scenera's "allegation [that it] was the lawful owner of all inventions Morris had developed during his employment" and (2) Morris's claims concerning "Scenera's failure to pay him wages and the termination of his employment."

The business court's 14 May 2012 judgment provided no authority for its determination that Morris's award of attorneys' fees "should, in part, be allocated among the claims on which he was successful and those on which he was not." Though the court stated in its judgment that it "considered the holdings in *Whiteside Estates* . . . and *Hamilton*[,]" it made no findings regarding whether Morris's claims were sufficiently related to preclude the allocation of attorneys' fees and did not address the legal standard relied upon in those decisions. Rather, the court's

discussion is limited to the reasonableness of the fees overall. Therefore, we are unable to review the court's decision to allocate among Morris's claims in accordance with *Hamilton, Okwara,* and *Whiteside Estates. See also Hensley,* 461 U.S. at 440, 76 L. Ed. 2d at 54–55. Accordingly, we reverse the business court's award of attorneys' fees and remand to the trial court for further findings of fact and conclusions of law regarding whether Morris's claims arose from a common nucleus of operative fact and, thus, whether he is entitled to all of his attorneys' fees.

### D. Rescission of Patent Assignments

[7] Morris next argues that "the trial court erred in its summary judgment order by foreclosing Morris's right to elect between money damages or rescission of the patent assignments" and requests that this Court remand this case "to the trial court with instructions that Morris is entitled to elect between his WHA [damages] award[] or rescission of his patent assignments." We agree.

The remedy of rescission "implies the . . . abrogation of [a] contract [by the party seeking it] and a restoration of the benefits [received] from the other party." *Brannock v. Fletcher,* 271 N.C. 65, 74, 155 S.E.2d 532, 541 (1967) (citation and quotation marks omitted).

> Rescission is not merely a termination of contractual obligation. It is abrogation or undoing of [the contract] from [its] beginning. It seeks to create a situation the same as if no contract ever had existed. . . . Rescission may [occur] by mutual agreement or . . . because of a substantial breach by [one party]. In either case, rescission of the contract entitles each party to be placed *in statu quo ante fuit.*[15]

*Id.* at 74–75 (citations and quotation marks omitted; italics in original).

Before addressing the merits of Morris's argument, we consider Defendants' contention that Morris waived his right to argue rescission on appeal because he did not raise that issue below. In support of this contention, Defendants allege that Morris "*never* sought rescission in the trial court" and "[h]is complaint did not include a claim for rescission

---

15. *in statu quo.* . . . In the condition in which (it was before): a part of the phrase *in statu quo ante fuit* . . . used with reference to the restoration of any person or property to the situation existing at a previous time . . . , or to the maintenance of the present situation unchanged.

4 William Dwight Whitney, The Century Dictionary and Cyclopedia 3123 (15th ed. 1906).

. . . nor did he plead rescission as an affirmative defense in his answer to Scenera's counterclaims." This is incorrect.

Morris's complaint, though it does not explicitly mention the word "rescission," asserts in its "[b]reach of [c]ontract" section that: (1) the parties entered into a contract whereby Morris would receive $10,000 for each patentable invention developed at Scenera, $5,000 for patent applications filed and $5,000 for patents issued; (2) Scenera breached the contract by refusing to pay those bonuses; and (3) Morris is owed, *inter alia,* "specific restitution in the form of the rights and ownership of the patent applications and patents" and "damages in excess of $10,000." In addition, both Defendants and the business court later acknowledged that Morris had requested "rescission" early in the proceedings and in his complaint, respectively. In fact, Morris referred to this request in his answer to Defendants' counterclaims, where he noted that he "seeks rescission of assignments for certain patents and patent applications," and during the summary judgment hearing. Accordingly, Morris preserved his right to argue rescission on appeal.

The substance of Morris's argument is that he is entitled to elect between the remedies of (1) damages for Scenera's breach of the WHA, which were awarded in the total amount of $885,000 at trial, or (2) rescission of the patent-bonus agreement ("PBA")[16] because intellectual property is considered unique and Scenera materially breached the PBA when it failed to pay the agreed-upon bonuses between 1 January 2008 and 17 June 2009. Citing *Wilson v. Wilson,* 261 N.C. 40, 134 S.E.2d 240 (1964), Morris points out that a material breach of contract going "to the very heart of the instrument" entitles the other party to elect to rescind the agreement and, further, does not bind that party to "relief at law by an award for damages." *See id.* at 43, 134 S.E.2d at 242. He also argues that the alternative remedy of rescission is commonly applied to contracts for the purchase of land under the theory that real estate is "unique property," the value of which cannot necessarily be encapsulated by a particular dollar amount. *See, e.g., Brannock,* 271 N.C. at 76, 155 S.E.2d at 542 (granting rescission of a land-sale contract). Because patents are considered to be "unique intangible personal property" by the federal courts, Morris argues that rescission is an appropriate alternative remedy in this circumstance. *See Baumel v. Rosen,* 283 F. Supp. 128, 146 (D. Md. 1968), *affirmed in part, reversed in part on other*

---

16. This is the agreement whereby Scenera would pay Morris $5,000 for every patent application and $5,000 for every issued patent in exchange for assignment of those patents by Morris to Scenera.

*grounds*, 412 F.2d 571 (4th Cir. 1969) (referring to patents or copyrights as "unique intangible personal property") (citation omitted); *see also Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 824 (11th Cir. 1982) ("Although the originality concept [of the Copyright Act] defies exact definition, courts generally agree that 'originality' for copyright purposes is something less than the novelty or uniqueness necessary for patent protection.").

Defendants offer three "independent reasons" that Morris's argument is without merit. First, Defendants contest the existence of the PBA and argue that no summary judgment evidence supports the existence of a separate, patent-bonus agreement between Morris and Scenera. Second, Defendants alternatively argue that the breach was not material because (a) the breach only existed for eighteen months and (b) the parties had already agreed on a fee of $5,000 for each patent application filed and patent issued, meaning that the damages award was an adequate remedy alone. Third, Defendants assert that ownership of each invention vested in Scenera "immediately upon its discovery" because Morris was "hired to invent" by Scenera and, thus, Morris was "legally bound to execute patent assignments as part of his employment duties." We are unpersuaded.

First, as Morris notes in his reply brief, the record before the business court on summary judgment included "ample evidence" of the existence of the PBA. Indeed, the affidavit provided by Morris in opposition to Scenera's motion for summary judgment describes the agreement between Morris and S. Fry in detail. Further, Morris stated in his 2010 deposition in the Eastern District of North Carolina action that "[he] had [his] own agreement and own payment [while he was an employee with Scenera]. It was 5 and 5. And that was established before these were drawn up."

Second, Scenera's failure to pay Morris under the PBA constitutes a *prima facie* material breach of that agreement. In *Wilson*, our Supreme Court described the breach requirement for rescission as follows:

> [W]here there is a material breach of the contract going to the very heart of the instrument, [*i.e.*, a dependent covenant,] the other party to the contract may elect to rescind and is not bound to seek relief at law by an award [of] damages. . . . A covenant is dependent where it goes to the whole consideration of the contract; where it is such an essential part of the bargain that the failure of it must be considered as destroying the entire contract; or where it is

such an indispensable part of what both parties intended that the contract would not have been made with the covenant omitted. A breach of such a covenant amounts to a breach of the entire contract; it gives to the injured party the right to sue at law for damages, or courts of equity may grant rescission in such instances if the remedy at law will not be full and adequate.

Rescission . . . is allowed to promote justice. The right to rescind does not exist where the breach is not substantial and material and does not go to the heart of the agreement.

*Wilson*, 261 N.C. at 43, 134 S.E.2d at 242–43 (citations and quotation marks omitted). Scenera's obligation to pay Morris for the patents submitted to and issuing from the patent office was a covenant on which the oral contract between the two parties depended. Failure to fulfill that covenant constitutes a material breach. The fact that Scenera failed to pay bonuses to Morris for eighteen months is relevant only to the extent that it provides a cap on the number of times Defendants breached; it does not affect the materiality of those breaches. Similarly, the adequacy of money damages is not relevant to the materiality of the breach. Our Supreme Court made it clear in *Wilson* that a party may "elect" to rescind an agreement when there is a material breach of this nature. *Id.*

Third, the business court's determination in its memorandum opinion that Morris was "hired to invent" is inapposite. As Morris notes in his reply brief, the "hired to invent" doctrine works to vest employers with intellectual property rights in those inventions made by their employees when those employees were hired to invent and *compensated for their work. See Speck v. N.C. Dairy Foundation, Inc.*, 311 N.C. 679, 687, 319 S.E.2d 139, 144 (1984) ("It matters not in what capacity the employee may originally have been hired, if he be set to experimenting with the view of making an invention[] *and accepts pay for such work*, it is his duty to disclose to his employer what he discovers in making the experiments, and what he accomplishes by the experiments belongs to the employer.") (citing *Houghton v. United States*, 23 F.2d 386, 390 (4th Cir. 1928)) (emphasis added). Morris was not compensated for the patents submitted to and issuing from the patent office between 1 January 2008 and 17 June 2009. Accordingly, Scenera's failure to pay those bonuses constituted a material breach of that contract and entitled Morris to sue for either rescission or damages. Because the jury granted damages for Scenera's breach, we direct the trial court to allow Morris to elect between the remedies of damages or rescission. *See, e.g., Mapp v. Toyota World, Inc.*, 81 N.C. App. 421, 426–27, 344 S.E.2d 297, 301 (1986)

("[W]e hold that plaintiff should be allowed to elect her remedy *after* the jury's verdict. . . . [I]t would be manifestly unfair to require plaintiffs . . . to elect before the jury has answered the issues *and* the trial court has determined whether to treble the compensatory damages found by the jury[. Therefore,] such election should be allowed in the judgment.") (emphasis in original).

### E. *Summary Judgment and Directed Verdict on Patent Ownership*

[8] Alternative to his fourth argument, Morris contends that the business court erred in granting Scenera's motions for (1) summary judgment on whether Morris was "hired to invent" and (2) directed verdict on ownership of the unassigned patents. Because we have remanded this case on the question of election of remedies between rescission and damages, we need not address this final argument.

NO ERROR in part, AFFIRMED in part, REVERSED in part, and REMANDED in part for further judgment.

Judges McGEE and HUNTER, ROBERT C., concur.