Insight Health Corp. v. Marquis Diagnostic Imaging of N.C., LLC, 2018 NCBC 66.

STATE OF NORTH CAROLINA

BUNCOMBE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 1783

INSIGHT HEALTH CORP. d/b/a
INSIGHT IMAGING,

Plaintiff,

v.

MARQUIS DIAGNOSTIC IMAGING
OF NORTH CAROLINA, LLC;
MARQUIS DIAGNOSTIC IMAGING,
LLC; JOHN KENNETH LUKE; and
GENE VENESKY,

Defendants.

**ORDER AND OPINION ON MOTION
FOR PREJUDGMENT INTEREST,
ATTORNEYS' FEES, AND COSTS**

1.  **THIS MATTER** is before the Court upon Plaintiff Insight Health Corporation's ("Insight") Motion for Prejudgment Interest, Attorneys' Fees, and Costs (the "Motion") in the above-captioned case.

2.  On June 5, 2018, this Court entered judgment against Defendants Marquis Diagnostic Imaging of North Carolina, LLC ("MDI-NC"), Marquis Diagnostic Imaging, LLC ("MDI"), John Kenneth Luke ("Luke"), and Gene Venesky ("Venesky" and collectively, with the other defendants "Defendants"). At that time, the Court granted Insight's Motion in part with regard to Insight's request for prejudgment interest while retaining jurisdiction for purposes of further considering Insight's request for attorneys' fees and costs.

3.  Briefing on Insight's Motion is now complete, and the Court elects, in its discretion and pursuant to Rule 7 of the General Rules of Practice and Procedure for the North Carolina Business Court ("BCR"), to decide these issues without a hearing.

After considering the parties' submitted materials and other appropriate matters of record, the Court **GRANTS** Insight's Motion as set forth herein.

> *Smith Moore Leatherwood, LLP, by Marcus C. Hewitt and Jeffery R. Whitley, for Plaintiff Insight Health Corporation d/b/a Insight Imaging.*

> *Roberts & Stevens, P.A., by Wyatt S. Stevens, Ann-Patton Hornthal, and John D. Noor, for Defendants Marquis Diagnostic Imaging of North Carolina, LLC, Marquis Diagnostic Imaging, LLC, John Kenneth Luke, and Gene Venesky.*

Bledsoe, Judge.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

4. The Court has reported the facts of this litigation multiple times. *Insight Health Corp. v. Marquis Diagnostic Imaging of N.C., LLC*, 2018 NCBC LEXIS 56, at *2–22 (N.C. Super. Ct. June 5, 2018); *Insight Health Corp. v. Marquis Diagnostic Imaging of N.C., LLC*, 2017 NCBC LEXIS 91, at *1–5 (N.C. Super. Ct. Oct. 3, 2017); *Insight Health Corp. v. Marquis Diagnostic Imaging of N.C., LLC*, 2017 NCBC LEXIS 14, at *2–11 (N.C. Super. Ct. Feb. 24, 2017). The following recitation is therefore limited to matters relevant to Insight's Motion.

5. This case primarily concerns a contract under which Insight leased an MRI scanner to MDI-NC (the "MRI Agreement"). *Insight Health Corp.*, 2018 NCBC LEXIS 56, at *3. After a series of events caused MDI-NC to sell its assets and close its doors, MDI-NC stopped paying Insight monthly rental payments. *Id.* at *5. The present lawsuit is the result of that nonpayment. *Id.* at *6.

6.    Insight brought suit against MDI-NC, MDI—which wholly owns MDI-NC—and Luke and Venesky—who each own a 49.5% interest in MDI. *Id.* at *3. On November 15, 2017, a jury found MDI-NC liable to Insight for $3,014,925 for breaching the MRI Agreement. *Id.* at *19. The jury also found Luke and Venesky liable to Insight for breach of fiduciary duty and constructive fraud and made the requisite factual findings for the Court to pierce MDI-NC's and MDI's corporate veils. *Id.* at *19–20. Based on these findings, the Court ordered the parties to submit further briefing on whether veil-piercing relief should be granted.

7.    In conjunction with the requested post-trial briefs, Insight also filed the present Motion, arguing that a reciprocal attorneys' fees provision contained in the MRI Agreement entitled Insight to an award of its attorneys' fees.[1] (Pl.'s Mot. Prejudgment Interest, Att'ys' Fees and Costs Ex. A ¶¶ 13, 21 [hereinafter "MRI Agreement"], ECF No. 209.)

8.    The Court's entry of judgment against Defendants and decision on Insight's Motion was temporarily delayed after Defendants initiated proceedings in the United States Bankruptcy Court for the Northern District of Georgia (the "Bankruptcy Court"). (Pl.'s Reply Defs.' Br. Opp'n Pl.'s Mot. Att'ys' Fees, Interest and Costs Exs. A, B, C, ECF. No. 227; Order Concerning Bankruptcy Stay ¶¶ 5–6, ECF No. 226.)

---

[1] The Court notes that Insight's Motion was not accompanied by a separate brief and thus did not comply with BCR 7.2. Exercising its discretion, the Court will excuse this violation in light of the unique limitations placed upon this case by Defendants' bankruptcy proceedings. The Court does not intend its decision in this instance to offer sanctuary to future litigants who fail to comply with BCR 7.2.

9. On May 8, 2018, the Bankruptcy Court entered an order in each of Defendants' bankruptcy cases allowing this Court to rule on the issues pending in this litigation. (Pl.'s Reply Defs.' Br. Opp'n Pl.'s Mot. Att'ys' Fees, Interest and Costs Exs. A, B, C.) Accordingly, the Court pierced MDI-NC's and MDI's corporate veils and entered judgment against all Defendants on June 5, 2018. Insight's Motion is the final matter before the Court.

10. In total, Insight's Motion requests $929,254.10 in attorneys' fees for an asserted 3,308.2 hours of work performed by Insight's counsel and counsel's support staff and $14,435.15 in costs. (Pl.'s Mot. Prejudgment Interest, Att'ys' Fees and Costs 8 [hereinafter "Motion for Fees"], ECF No. 209.) Defendants dispute portions of these requests. (Defs.' Br. Opp'n Pl.'s Mot. Att'ys' Fees and Interest 2, ECF No. 217.)

II.

LEGAL STANDARD

11. In North Carolina, a party may only recover attorneys' fees "if such a recovery is expressly authorized by statute." *Robinson v. Robinson*, 210 N.C. App. 319, 336, 707 S.E.2d 785, 797 (2011) (internal quotation marks omitted). Where an award of attorneys' fees is authorized, the trial court's determination as to the amount of attorneys' fees awarded "will not be disturbed without a showing of manifest abuse of [the court's] discretion." *Bryson v. Cort*, 193 N.C. App. 532, 540, 668 S.E.2d 84, 89 (2008). The trial court "may also in its discretion consider and make findings on the services expended by paralegals and secretaries acting as paralegals if, in the trial court's opinion, it is reasonable to do so." *United Labs., Inc.*

*v. Kuykendall*, 335 N.C. 183, 195, 437 S.E.2d 374, 382 (1993) (internal quotation marks omitted).

## III.

## ANALYSIS

12. Insight's Motion presents the Court with three issues. First, the Court must determine whether there is a statutory basis to award Insight attorneys' fees. *See Furmick v. Miner*, 154 N.C. App. 460, 461–62, 573 S.E.2d 172, 174 (2002). Second, the Court must consider the appropriate apportionment of attorneys' fees given the nature of the issues in this case. Finally, the Court must assesses the reasonableness of Insight's requested award.

A.    Statutory Basis for Award of Insight's Attorneys' Fees

13. Following our legislature's enactment of N.C. Gen. Stat. § 6-21.6 in 2011, "[r]eciprocal attorneys' fees provisions in business contracts are valid and enforceable for the recovery of reasonable attorneys' fees and expenses" as long as the contract is signed in a manner approved by statute. N.C. Gen. Stat. § 6-21.6(b); *Kezeli v. Logan*, 2015 NCBC LEXIS 31, at *18 n.40 (N.C. Super. Ct. Mar. 26, 2015). "If a business contract governed by the laws of this State contains a reciprocal attorneys' fees provision, the court . . . in any suit . . . may award reasonable attorneys' fees in accordance with the terms of the business contract." N.C. Gen. Stat. § 6-21.6(c). Section 6-21.6 defines a business contract as "[a] contract entered into primarily for business or commercial purposes." *Id.* § 6-21.6(a)(1). A "reciprocal attorneys' fees provision" is a term by which each party agrees "to pay or reimburse the other parties

for attorneys' fees and expenses incurred by reason of any suit, action, proceeding, or arbitration involving the business contract." *Id.* § 6-21.6(a)(4).

14. Both sides in this case agree that the MRI Agreement contains a reciprocal attorneys' fees provision that is enforceable under section 6-21.6. The Court agrees with the parties based on the following facts:

    a. The MRI Agreement documented the lease of an MRI scanner from Insight to MDI-NC. (MRI Agreement ¶ 1.)

    b. The MRI Agreement was entered into for business or commercial purposes—the acquisition of an MRI scanner by MDI-NC for its imaging facility and the stream of revenue generated for Insight. (MRI Agreement 7.)

    c. The MRI Agreement contains a provision reading, "If either party engages an attorney for the purpose of enforcing this Agreement, or any judgment based hereon in any court . . . the prevailing party shall be entitled to receive its attorneys' fees and costs, whether taxable or not, in addition to all other relief." (MRI Agreement ¶ 21.)

    d. The MRI Agreement was hand-signed by authorized representatives of Insight and MDI-NC. (MRI Agreement 6.)

15. The Court further finds that Insight succeeded on its claims for breach of contract, breach of fiduciary duty, and constructive fraud, as well as its request to pierce the corporate veils of MDI-NC and MDI. The Court thus concludes that Insight

is the "prevailing party" in this action and that section 6-21.6 authorizes this Court to award Insight its attorneys' fees under paragraph 21 of the MRI Agreement.

B.    Award of Insight's Attorneys' Fees on All Claims

16.    As a preliminary part of determining whether Insight's requested fees award is reasonable, the Court addresses an issue raised by Defendants' opposition to Insight's Motion.

17.    Defendants contend that Insight's requested award is excessive because Insight's recovery of attorneys' fees "should be limited to the reasonable attorneys' fees associated with 'enforcing the [MRI] Agreement' *against MDI-NC*[.]" (Defs.' Br. Opp'n Pl.'s Mot. Att'ys' Fees and Interest 2.)  Because only MDI-NC signed the MRI Agreement, and because Insight's other claims in this action were not based directly on the MRI Agreement, Defendants insist that Insight should not be permitted to recover "attorneys' fees associated [with] litigating the extra-contractual claims against the non-signatory defendants" or MDI-NC's previously dismissed counterclaims. (Defs.' Br. Opp'n Pl.'s Mot. Att'ys' Fees and Interest 2.)

18.    Controlling precedent in North Carolina has long-recognized that "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983); *see Morris v. Scenera Research, LLC*, 229 N.C. App. 31, 58, 747 S.E.2d 362, 378 (2013) (noting that North Carolina appellate precedent concerning apportionment of attorneys' fees relies upon the reasoning in *Hensley*), *rev'd on other*

*grounds*, 368 N.C. 857, 788 S.E.2d 154 (2016).  In contrast, "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the [fact finder] did not adopt each contention raised."  *Hensley*, 461 U.S. at 440.

19.     Thus, where attorneys' fees are not recoverable for litigating certain claims in an action but are recoverable for other claims in that same action, "fees incurred in [litigating] both types of claims are recoverable where the time expended on [litigating] the non-recoverable and the recoverable claims overlap[s] and the claims arise 'from a common nucleus of law or fact.'"  *Philips v. Pitt Cty. Mem'l Hosp., Inc.*, 242 N.C. App. 456, 459, 775 S.E.2d 882, 884 (2015) (quoting *Okwara v. Dillard Dep't Stores, Inc.*, 136 N.C. App. 587, 595, 525 S.E.2d 481, 486 (2000)); *Whiteside Estates, Inc. v. Highlands Cove, L.L.C.*, 146 N.C. App. 449, 467, 553 S.E.2d 431, 443 (2001). A common nucleus of law or fact exists where "each claim [is] 'inextricably interwoven' with the other claims[.]"  *Whiteside Estates, Inc.*, 146 N.C. App. at 467, 553 S.E.2d at 443 (quoting *Okwara*, 136 N.C. App. at 596, 525 S.E.2d at 487).

20.     Courts of this State apply the "reasonable relation test" to determine whether claims are inextricably interwoven such that apportionment of fees is unnecessary: "'reasonableness, not arbitrary classification of attorney activity, is the key factor under all our attorneys' fees statutes' in awarding fees for attorney activity connected with . . . the statute."  *Id.* (quoting *Coastal Prod. Credit Ass'n v. Goodson Farms, Inc.*, 70 N.C. App. 221, 228, 319 S.E.2d 650, 656 (1984)).  The trial court must support its conclusions as to whether claims meet the reasonable relation test with

specific findings of fact. *Messer v. Pollack*, No. COA17-582, 2018 N.C. App. LEXIS 133, at *6–7 (N.C. Ct. App. Feb. 6, 2018) (remanding where trial court's conclusion that claims and counterclaims were "inseparable" lacked findings or explanation); *Morris v. Scenera Research, LLC*, 2016 NCBC LEXIS 101, at *19–20 (N.C. Super. Ct. Dec. 19, 2016) (explaining that to deny an award for unsuccessful claims, the trial court must make "express findings that the unsuccessful claims did not arise from a common nucleus of operative fact upon which the successful claims were based" (citing *Morris*, 229 N.C. App. at 56, 747 S.E.2d at 377–78)).

21.    In the case at bar, Insight brought a claim for breach of contract against MDI-NC to recover its pecuniary losses arising from MDI-NC's breach of the MRI Agreement. Recovering damages for the MRI Agreement's breach in this case required pursuing relief that would help to ensure Insight recovered the money it was due under the MRI Agreement. Part of this effort involved Insight's request to pierce MDI-NC's and MDI's corporate veils and hold all Defendants liable for MDI-NC's breach of the MRI Agreement. (*See* Am. Compl. ¶¶ 98–102(f), ECF No. 61.)

22.    Our Supreme Court's most recent opinion on corporate veil piercing clarified that "piercing the corporate veil is not a theory of liability" but a means of seeking relief from those "who would otherwise be shielded by the corporate form." *Green v. Freeman*, 367 N.C. 136, 146, 749 S.E.2d 262, 271 (2013). The purpose of piercing is to "place the burden of the loss upon the party who should be responsible." *Glenn v. Wagner*, 313 N.C. 450, 458, 329 S.E.2d 326, 332 (1985).

23. Prior to the initiation of this lawsuit and throughout its duration, Defendants represented that MDI-NC was completely insolvent. (Motion for Fees 10; Trial Tr. 786:14–15.) What money MDI-NC had—the funds acquired from selling MDI-NC's assets—did not go to pay Insight for any remaining portion of the MRI Agreement and was instead transferred to other creditors of MDI-NC and other entities Luke and Venesky owned. For example, some of the funds generated from the asset sale went to pay a debt owed by another LLC owned by MDI—Marquis Diagnostic Imaging of Arizona, LLC. (Trial Tr. 542:14–543:25.) Enforcing the MRI Agreement required Insight to request veil-piercing relief on its breach of contract claim, and the Court entered judgment on that claim and granted Insight's request against all Defendants.

24. Because piercing the corporate veil is not a separate claim under the law of this State but a means to recover on an underlying claim, the Court concludes that Insight's request to pierce the corporate veil in this case was inextricably interwoven with Insight's claim to enforce the MRI Agreement and arose from a common nucleus of law or fact. *See Green*, 367 N.C. at 146, 749 S.E.2d at 271. Accordingly, because Insight may recover reasonable fees associated with enforcement of the MRI Agreement under section 6-21.6, Insight will be permitted to recover its reasonable fees associated with litigating its requested veil-piercing relief. *See Whiteside Estates, Inc.*, 146 N.C. App. at 467, 553 S.E.2d at 443. All Defendants shall be subject to the Court's award of attorneys' fees, as judgment on MDI-NC's breach of contract

was entered against all Defendants. *Insight Health Corp.*, 2018 NCBC LEXIS 56, at *54–55.

25. The Court next addresses whether reasonable fees associated with Insight's extra-contractual claims should likewise be recoverable. In addition to its breach of contract claim, Insight asserted claims against all Defendants for unfair or deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1, fraudulent transfer under N.C. Gen. Stat. § 39-23 *et seq.*, and wrongful distribution and personal liability under N.C. Gen. Stat. § 57D-406 *et seq.*, and against Luke and Venesky individually for breach of fiduciary duty and constructive fraud (collectively, the "extra-contractual claims"). *Id.* at *6. Although only a subset of these claims proceeded to trial, and Insight was not successful on all of its own claims, the Court finds that the time spent on all of these claims overlapped with Insight's recoverable claim and request for relief and arose from a common nucleus of law or fact shared with Insight's recoverable claim and request for relief.

26. To prove that MDI-NC breached the MRI Agreement as a result of the domination and control exerted by MDI, Luke, and Venesky, Insight submitted, among other things, evidence of the following at trial:

   a. Luke and Venesky transferred MDI-NC's and MDI's cash to other entities they owned, and generally moved cash between their entities, without proof of intercompany loans or other instruments to formalize these transfers of funds. (Trial Tr. 506:14–511:16.)

b. The last of the funds MDI-NC received for the sale of its assets were, in part, used to pay the debts of other LLCs owned by MDI and controlled by Luke and Venesky instead of being used to pay Insight for any portion of the remaining MRI Agreement's term. (Trial Tr. 542:14–543:25.)

c. Other funds MDI-NC had remaining after selling all its assets and ceasing business were used to pay debts owed to creditors who held personal guarantees from Luke and Venesky. (Trial Tr. 457:7–10, 466:10–468:24.)

27. Insight's extra-contractual claims were all based upon these same facts. Specifically, the extra-contractual claims arose from allegations that Defendants "caused the [d]istribution of the proceeds from [MDI-NC's asset sale]" to MDI, Luke, and Venesky; "entities affiliated with" MDI-NC, MDI, and Luke and Venesky; or "other creditors on a preferential basis." (*See* Am. Compl. ¶¶ 68, 79, 81, 85–97, 104–09, 112–13.) The Court thus finds that the facts underlying Insight's extra-contractual claims were inextricably interwoven with those supporting Insight's claim for breach of contract and request to pierce the corporate veil and, further, that the time spent litigating the extra-contractual claims overlapped with the time expended on Insight's recoverable claim and request for relief.

28. Moreover, Plaintiff has won substantial relief through this lawsuit, including all of the compensatory damages it sought against Defendants. *See Hensley*, 461 U.S. at 440 (noting that a plaintiff who wins substantial relief through

the pursuit of related claims "should not have his attorney's fee reduced simply because the [fact finder] did not adopt each contention raised").

29. Consequently, the Court concludes that Insight shall be permitted to recover reasonable attorneys' fees incurred in prosecuting these extra-contractual claims.[2]

30. Turning to Insight's fees associated with litigating MDI-NC's counterclaims, the Court reaches a similar conclusion. MDI-NC brought counterclaims for fraud in the inducement and unfair or deceptive trade practices against Insight, both of which the Court dismissed at summary judgment. *Insight Health Corp.*, 2017 NCBC LEXIS 14, at *13–21.

31. MDI-NC's fraud claim alleged that Insight fraudulently induced MDI-NC to enter the MRI Agreement and sought damages and rescission of the MRI Agreement. (Def. MDI-NC's Am. Countercls. ¶¶ 33–39, ECF No. 127.) As such, the Court concludes that defending against this counterclaim was a necessary part of enforcing the MRI Agreement and that Insight's fees associated with litigating this claim are recoverable under the MRI Agreement and section 6-21.6. Furthermore, as this counterclaim dealt directly with the MRI Agreement and its enforceability, the Court concludes that it was inextricably interwoven with Insight's breach of contract claim and arose from the same common nucleus of law or fact. The time expended on this counterclaim overlapped with that expended on Insight's breach of contract claim.

---

[2] In so ruling, the Court does not intend this decision to serve as precedent in cases where the record clearly reflects significant amounts of non-overlapping time spent solely on non-recoverable, but factually related, claims. *See Philips*, 242 N.C. App. at 459, 775 S.E.2d at 884 (stating apportionment is unnecessary where the time expended on recoverable and non-recoverable claims overlaps and the claims arise form a common nucleus of law or fact).

Thus, Insight's attorneys' fees should be recoverable as to this counterclaim on this additional basis.

32. MDI-NC's unfair or deceptive trade practice claim alleged that Insight engaged in deceptive and unfair behavior while negotiating and executing the MRI Agreement. (Def. MDI-NC's Am. Countercls. ¶¶ 40–43.) The alleged facts supporting this counterclaim incorporated and were identical to those supporting MDI-NC's fraud in the inducement counterclaim. (Def. MDI-NC's Am. Countercls. ¶¶ 40–43.) The facts underlying the unfair or deceptive trade practices counterclaim were thus the same facts that were pertinent to the enforceability of the MRI Agreement. The Court therefore concludes that MDI-NC's counterclaim for unfair or deceptive trade practices arose from a common nucleus of law or fact and was inextricably interwoven with Insight's claim for breach of contract. The time expended on this counterclaim overlapped with that expended on Insight's breach of contract claim. Insight's attorneys' fees shall thus be recoverable as to this counterclaim as well.

33. In sum, based on the found facts recited above, and for the reasons explained herein, the Court concludes that all claims and counterclaims in this action were inextricably interwoven and arose from the same common nucleus of law or fact. Time expended litigating these claims and counterclaims overlapped significantly. Apportionment of Insight's fees is therefore "unnecessary and unrealistic." *Whiteside Estates, Inc.*, 146 N.C. App. at 467, 553 S.E.2d at 443; *see also Philips*, 242 N.C. App. at 459, 775 S.E.2d at 884. Insight shall be permitted to recover reasonable attorneys' fees associated with litigating all claims and issues in this case.

C.    Amount of Fees Awarded

34.    An award for attorneys' fees under section 6-21.6 must be reasonable, and the trial court must make findings supporting any award. *See WFC Lynnwood I LLC v. Lee of Raleigh, Inc.*, No. COA18-562, __ N.C. App. __, 2018 N.C. App. LEXIS 564, at *15 (N.C. Ct. App. June 5, 2018). "In order for the appellate court to determine if the statutory award of attorneys' fees is reasonable the record must contain findings of fact as to the time and labor expended, the skill required, the customary fee for like work, and the experience or ability of the attorney." *Id.* The trial court must also make any additional findings required by the particular circumstances that permit an award of attorneys' fees. *See, e.g.*, N.C. Gen. Stat. § 6-21.6(c); N.C. Rev. R. Prof. Conduct 1.5(a).

35.    Specifically, under section 6-21.6(c), a trial court may consider the following factors in determining the reasonableness of attorneys' fees requested pursuant to a reciprocal attorneys' fees provision in a business contract:

(1)  The amount in controversy and the results obtained.
(2)  The reasonableness of the time and labor expended, and the billing rates charged, by the attorneys.
(3)  The novelty and difficulty of the questions raised in the action.
(4)  The skill required to perform properly the legal services rendered.
(5)  The relative economic circumstances of the parties.
(6)  Settlement offers made prior to the institution of the action.
(7)  Offers of judgment pursuant to Rule 68 of the North Carolina Rules of Civil Procedure and whether judgment finally obtained was more favorable than such offers.
(8)  Whether a party unjustly exercised superior economic bargaining power in the conduct of the action.
(9)  The timing of settlement offers.
(10)  The amounts of settlement offers as compared to the verdict.
(11)  The extent to which the party seeking attorneys' fees prevailed in the action.

(12) The amount of attorneys' fees awarded in similar cases.

(13) The terms of the business contract.

N.C. Gen. Stat. § 6-21.6(c).[3]

36. The Court begins by examining the reasonableness of the total number of hours billed to Insight. In determining the number of hours reasonably expended on the litigation, the Court will exclude those that are "excessive, redundant, or otherwise unnecessary." *Out of the Box Developers, LLC v. Doan Law, LLP*, 2014 NCBC LEXIS 39, at *24 (N.C. Super. Ct. Aug. 29, 2014) (quoting *Hensley*, 461 U.S. at 434).

37. Insight's counsel and support staff expended 3,308.2 hours pursuing this litigation to its end. (Motion for Fees 8.) These hours are thoroughly detailed and described in invoices Insight's counsel submitted in connection with their client's Motion, located on the Court's docket at ECF Nos. 214.1–214.5. The hours are also summarized per month in the Affidavit of Marcus Hewitt ("Mr. Hewitt"), Insight's lead attorney. (Hewitt Aff. Ex. 1, ECF No. 209.)

38. Additionally, the Court has also reviewed the Affidavit of Gilbert C. Laite, III ("Mr. Laite"), an attorney with the law firm of Williams Mullen, who, like Insight's attorneys, regularly practices complex civil litigation in the Raleigh, North Carolina area. (Laite Aff. ¶ 2, ECF No. 209.) Mr. Laite affirms that the number of hours billed by Insight's counsel was "reasonable and necessary to litigate the types of claims,

---

[3] The factors set out by our Court of Appeals in cases like *WFC Lynnwood I LLC* and those factors listed in N.C. Gen. Stat. § 6-21.6(c) and Rule 1.5 of the North Carolina Rules of Professional Conduct overlap significantly. The Court's findings herein are meant to address the relevant factors provided by each governing authority.

issues, and remedies in" this case over a multi-year period "resulting in a seven-day jury trial." (Laite Aff. ¶ 8.)

39. As of this date, this litigation has lasted over four years and has involved a significant number of complicated legal issues. In order to pursue Insight's claims through trial, Insight's attorneys were required to (i) research and argue complex and novel questions of law, including evidentiary questions about breaches of fiduciary duty, constructive fraud, and piercing the corporate veil; (ii) investigate a web of LLCs and bank transfers; and (iii) lead a team of attorneys and paralegals that compiled, organized, and presented evidence sufficient to convince a jury to find in favor of Insight's claims. Having reviewed appropriate matters of record, including Mr. Laite's affidavit and Insight's attorneys' fees invoices, the Court finds that the hours expended on this case by Insight's counsel are reasonable, with two caveats.

40. First, Insight's invoice for March 2014 indicates Insight was billed a total of 41.2 hours for that month. The invoice only accounts for a portion of this time and begins showing charges on March 10, 2014. The Court cannot discern what work the remainder of these hours involved, and will thus exclude these hours from Insight's requested award. The Court also excludes 0.7 hours billed on October 30, 2017 because a redaction to Insight's October 2017 invoice leaves the Court unable to conclude that the billed time was related to this lawsuit. In total, the Court excludes 28.9 hours of billed time on these grounds.

41. Second, Insight's invoices reflect hours billed by Insight's counsel for handling matters with State agencies or regulatory bodies and Insight's Buncombe

County Certificate of Need—work associated with relocating the MRI scanner leased to MDI-NC. While Insight was required to move the MRI scanner sooner than expected following MDI-NC's breach of the MRI Agreement, this work by counsel was not associated with enforcing the MRI Agreement or litigating any other claim or issue in this case. Insight would have had to relocate the MRI scanner at MDI-NC's facility even if MDI-NC had paid the rest of the MRI Agreement in full because MDI-NC closed its business. The Court will exclude 11.8 hours from Insight's fee request on this basis.

42.     Taking the above into consideration, the Court finds that a total of 40.7 hours should be excluded from Insight's fee request. For the reasons stated above, the Court finds the remaining 3,267.5 hours to have been reasonably expended in litigating this case.

43.     Turning to the hourly rates requested, Insight was charged hourly rates of $375–$405 and $230–$275, respectively, by its two primary attorneys. (Motion for Fees 8; Hewitt Aff. ¶¶ 9–11.) Litigation support staff and paralegals assigned to the case charged Insight rates between $150 to $250 per hour. (Motion for Fees 9.) All fees incurred after March 2016 were given a 20% discount. (Motion for Fees 9.)

44.     The Court is aware of the range of hourly rates charged by law firms in North Carolina for litigation of similar business contracts and litigation in other complex civil cases and takes judicial notice of such rates for the purposes of this decision. *See Simpson v. Simpson*, 209 N.C. App. 320, 328, 703 S.E.2d 890, 895 (2011) ("[A] district court, considering a motion for attorneys' fees . . . is permitted, although

not required, to take judicial notice of the customary hourly rates of local attorneys performing the same services and having the same experience."); *see also In re Krispy Kreme Doughnuts, Inc., S'holder Litig.*, 2018 NCBC LEXIS 61, at \*21 (N.C. Super. Ct. June 20, 2018) (holding an hourly rate of $300 reasonable); *In re Newbridge Bancorp S'holder Litig.*, 2016 NCBC LEXIS 91, at \*46–47 (N.C. Super. Ct. Nov. 22, 2016) (finding rates charged in North Carolina for complex civil litigation range from $250 to $475); *Corwin v. British Am. Tobacco PLC*, 2016 NCBC LEXIS 14, at \*15 (N.C. Super. Ct. Feb. 17, 2016) (finding an average hourly rate of $325.04 reasonable); *In re Pike Corp. S'holder Litig.*, 2015 NCBC LEXIS 95, at \*22–23 (N.C. Super. Ct. Oct. 8, 2015) (finding hourly rates of $550, $375, and $250 to be within, but at the higher end of, reasonable fees for complex business litigation in North Carolina); *In re PokerTek Merger Litig.*, 2015 NCBC LEXIS 10, at \*23–24 (N.C. Super. Ct. Jan. 22, 2015) (concluding that fees "in the range of $250–$450 per hour" were "consistent with the Court's own experience" and finding "an average attorney rate of $226.83 per hour" to be "reasonable and clearly not excessive").

45. The Court also considers Mr. Laite's affidavit on this topic. *See WFC Lynnwood I LLC*, 2018 N.C. App. LEXIS 564, at \*18 (remanding case in part on attorneys' fees award because the record did not contain competent evidence of comparable rates). Mr. Laite has reviewed the hourly rates charged by Insight's counsel, as reported by Mr. Hewitt's affidavit, and affirms that they are "reasonable and within the range of prevailing market rates charged by comparable law firms in

North Carolina for the type of attorneys with comparable levels of skill and experience in complex civil litigation." (Laite Aff. ¶ 7.)

46. On these grounds, the Court finds that the billing rates charged by Insight's attorneys were reasonable, appropriate, clearly not excessive, and commensurate with customary rates charged by firms and attorneys of similar experience and skill levels within and around Raleigh, North Carolina for like work. The Court will use the submitted rates in calculating the attorneys' fees to be awarded.

47. The Court next turns to the amount in controversy in this case, the results obtained, and the extent to which the party seeking attorneys' fees prevailed in the action—the first and eleventh factors listed in section 6-21.6. The jury in this case returned a verdict favorable to Insight on all submitted issues. (Verdict Sheet 1–3.) Those claims that did not proceed to trial were, with one exception, voluntarily dismissed by Insight.[4] (Notice Partial Voluntary Dismissal and Withdrawal Certain Claims Without Prejudice 1–2, ECF No. 182.) The jury determined that Insight was entitled to $3,014,925 in damages for MDI-NC's breach of contract. (Verdict Sheet 1.) The jury also determined that Luke and Venesky controlled MDI-NC and MDI under the factors and elements of North Carolina's instrumentality rule, (Verdict

---

[4] The Court dismissed Insight's claim for unfair or deceptive trade practices by directed verdict. *Insight Health Corp.*, 2018 NCBC LEXIS 56, at *10. As noted above, however, the Court concludes that an apportionment of fees related to this claim, the voluntarily dismissed claims, and Insight's other claims is not required due to the common nucleus of facts or law shared by all of the claims. *See Hensley*, 461 U.S. at 440 ("Given the interrelated nature of the facts and legal theories in this case, the [trial court] did not err in refusing to apportion the fee award mechanically on the basis of respondents' success or failure on particular issues."); *Morris*, 229 N.C. App. at 58, 747 S.E.2d at 378; *Whiteside Estates, Inc.*, 146 N.C. App. at 467, 553 S.E.2d at 443.

Sheet 2), and the Court entered judgment piercing MDI-NC's and MDI's limited liability veils and holding all Defendants liable for Insight's breach of contract claim, *Insight Health Corp.*, 2018 NCBC LEXIS 56, at *54–55. These factors weigh in favor of awarding Insight its requested attorneys' fees.

48. The Court next considers the novelty and difficulty of questions raised in this action, the skill required to properly perform the legal services rendered, and the ability of Insight's attorneys. Litigating Insight's claims through trial required counsel to research, brief, and argue questions of fact and law involving personal jurisdiction over out-of-state defendants; mitigation of damages, including law relating to lost-volume sellers and lessors; affirmative defenses, including fraud and unclean hands; and piercing the corporate veil. *See Insight Health Corp.*, 2018 NCBC LEXIS 56, at *25–55; *Insight Health Corp.*, 2017 NCBC LEXIS 91, at *10–13; *Insight Health Corp.*, 2017 NCBC LEXIS 14, at *21–28, *40–44; *Insight Health Corp. v. Marquis Diagnostic Imaging of N.C., LLC*, 2015 NCBC LEXIS 7, at *5–22 (N.C. Super. Ct. Jan. 21, 2015). These questions presented difficult issues for both counsel and the Court and required a high degree of skill to litigate. Both of Insight's counsel possessed such skill. Mr. Hewitt is a partner at the law firm of Smith Moore Leatherwood, LLP, has practiced in North Carolina for over sixteen years, and has received recognition as a top attorney in his field. (Hewitt Aff. ¶¶ 3–6.) Attorney Jeffrey Whitley ("Mr. Whitley") is an associate with four years' experience in complex civil litigation. (Hewitt Aff. ¶ 9.) Mr. Hewitt and Mr. Whitley demonstrated great

ability in all aspects of this litigation.[5]  The Court finds that these factors weigh in favor of awarding Insight its requested attorneys' fees.

49.    As to the relative economic circumstances of the parties, the record shows that both sides possess a high degree of sophisticated business acumen.  Insight is a national corporation with considerable capital and revenue.  Defendants Luke and Venesky engaged in business in multiple fields, including medical imaging, fishing tackle production, and real estate investment, and have operated multiple LLCs and other entities to carry out that business—LLCs like MDI and MDI-NC.  (Trial Tr. 736:11–20, 796:7–22.)    The Court must also consider, however, that evidence introduced at trial showed that Defendants lost a great deal of money while running their imaging business in Asheville.   After Insight filed its Motion requesting attorneys' fees, Defendants filed for bankruptcy.  The record before the Court does not reveal the exact economic circumstances of Defendants now, but Insight clearly holds a superior economic position to Defendants.  This factor does not weigh in favor of awarding Insight its requested fees.

50.    With regard to factors six, seven, nine, and ten of section 6-21.6(c), the Court finds the following facts:

    a. Defendants made no offers to settle before Insight began this lawsuit. (Motion for Fees 10.)

    b. Defendants have repeatedly represented that MDI-NC has no funds with which to pay Insight.  (Motion for Fees 10; Trial Tr. 786:14–15.)

---

[5]  This fact was particularly apparent given the experienced and able opponent Insight's counsel faced in Defendants' counsel.

c. Both sides engaged in two mediations over the course of the case, and only at the second did Defendants' settlement offers exceed Insight's then-accrued attorneys' fees. (Motion for Fees 10.)

d. Defendants made one offer of judgment in early 2015 in the amount of $50,000, an amount significantly less than what the jury awarded Insight at trial. (Motion for Fees 10.)

e. Luke and Venesky repeatedly refused to commit themselves to personal liability for any portion of the settlement expense. (Motion for Fees 10.)

51. Defendants had multiple opportunities to avoid unnecessary expenses and an ultimately unfavorable outcome in this case. Defendants did not seize these opportunities. Defendants' settlement offers were far below Insight's contended damages, and Luke and Venesky refused to personally take on any liability from settlement despite repeatedly informing Insight that MDI-NC had no assets of its own to pay Insight. The Court finds that factors six, seven, nine, and ten weigh in favor awarding Insight its requested fees.

52. The Court has already considered factor twelve of section 6-21.6 in its discussion of Insight's counsel's billed hours and rates. This factor also weighs in favor of awarding Insight its requested attorneys' fees.

53. With regard to the terms of the business contract in question, the Court has already concluded that the terms of the MRI Agreement allow for Insight's award. The reciprocal attorneys' fees provision contained within the MRI Agreement is

plainly worded and was agreed to by both sides. (MRI Agreement ¶ 21.) This factor weighs in favor of awarding Insight its requested fees.

54.   Finally, the Court also considers those factors listed by Rule 1.5(a) of the North Carolina Revised Rules of Professional Conduct which have not yet been addressed, particularly Rule 1.5(a)(2), (5), (6), and (8). The Court finds (i) that the record does not suggest that acceptance of representation in this case precluded other employment by Insight's counsel, (ii) that the record does not indicate that time limitations were imposed by Insight or by the circumstances of this case, (iii) that the record does not indicate the nature and length of counsel's professional relationship with Insight, except that said relationship lasted more than four years over the course of this case, and (iv) that Insight paid a fixed fee during this litigation.

55.   Having considered the above, the Court excludes those hours deemed excessive, redundant, or otherwise unnecessary from Insight's request. In light of the Court's determination that the billing rates reflected in Insight's invoices are reasonable, the Court excludes the fees associated with these hours at the respective rates at which each excluded hour was billed. Eliminating these charges results in a total award of $917,553.80. Based on the foregoing discussion, the Court concludes that this amount is reasonable and clearly not excessive.

D.    Award of Costs

56.   Insight seeks an award of its costs under N.C. Gen. Stat. §§ 6-1 and 7A-305. Section 6-1 provides that "[t]o the party for whom judgment is given, costs shall be allowed as provided in Chapter 7A and this Chapter." N.C. Gen. Stat. § 6-1. This

mandate includes section 7A-305(d).  Our Court of Appeals has determined that trial courts are "afforded no discretion in determining whether or not to award those costs enumerated under section 7A-305(d)." *Khomyak v. Meek*, 214 N.C. App. 54, 57, 715 S.E.2d 218, 220 (2011).  These costs include mediator fees, "[r]easonable and necessary fees of expert witnesses solely for actual time spent providing testimony at trial, deposition, or other proceedings," and "[r]easonable and necessary expenses for stenographic and videographic assistance directly related to the taking of depositions and for the cost of deposition transcripts."  N.C. Gen. Stat. § 7A-305(d).

57.    Insight seeks the following amounts for costs:

    a.  For mediation costs:

        i.  $100 for a mediator's administrative fee.  (Hewitt Aff. Ex. 3.)

        ii.  $1,613.60 for Insight's portion of the first mediation fee.  (Hewitt Aff. Ex. 3.)

        iii.  $968.75 for Insight's portion for the second mediation fee.  (Hewitt Aff. Ex. 3.)

    b.  For deposition and transcript costs:

        i.  $748.25 for a court reporter and transcript of Luke's deposition. (Hewitt Aff. Ex. 3.)

        ii.  $2,002 for the deposition transcript of former Defendant Tom Gentry.  (Hewitt Aff. Ex. 3.)

        iii.  $1,491 for the deposition transcript of Venesky.  (Hewitt Aff. Ex. 3.)

iv.  $1,173.05 for the deposition transcript of Scott McKee.  (Hewitt Aff. Ex. 3.)

v.  $597.50 for the deposition transcript of Lynn Henderson.  (Hewitt Aff. Ex. 3.)

vi.  $1,703 for a court reporter and transcript for the deposition of Defendants' expert witness.  (Hewitt Aff. Ex. 3.)

c.  For Insight's expert witness costs:

i.  $1,350 for Defendants' expert witness fee for deposition.  (Hewitt Aff. Ex. 3.)

ii.  $2,688 for Insight's expert witness fee for trial testimony.  (Hewitt Aff. Ex. 3.)

58.  Defendants do not object to Insight's requested costs "to the extent [the] costs [are] related to Insight's breach of contract action against MDI-NC" but do object to these costs to the extent they relate to litigating extra-contractual claims.  (Defs.' Br. Opp'n Pl.'s Mot. Att'ys' Fees and Interest 2.)  The Court has considered this argument and, in light of the statutes and case law cited herein, declines to engage in such an apportionment.

59.  This Court has entered judgment for Insight, and every cost Insight has requested belongs to a category enumerated in section 7A-305(d).  N.C. Gen. Stat. § 7A-305(d).  The Court has reviewed each cost item Insight seeks to recover and the evidence for each contained in Insight's submitted documents.  Based on this review, the Court finds that the costs and expenses Insight incurred in litigating this action

were reasonable and necessary, customary in amount, and clearly not excessive. The Court thus concludes Insight's requested costs should be awarded.

IV.

CONCLUSION

60. **WHEREFORE**, the Court, in the exercise of its discretion, hereby **GRANTS** Insight's Motion as follows:

a. Defendants shall pay Insight its reasonable attorneys' fees in the total amount of $917,553.80.

b. Defendants shall pay Insight its recoverable costs in the total amount of $14,435.15.

**SO ORDERED**, this the 6th day of July, 2018.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge